1
               **UNITED STATES DISTRICT COURT**
               **WESTERN DISTRICT OF NEW YORK**

2

3
UNITED STATES OF AMERICA,      )
                            ) Case No. 1:15-CR-00033

4
                            )           (RJA)(HBS)
               Plaintiff,    )

5
                            )
vs.                     ) January 30th, 2018

6
                            )
AARON HICKS,               )

7
                            )
             Defendant.    )

8

9

10
            **TRANSCRIPT OF STATUS CONFERENCE**
       **BEFORE THE HONORABLE RICHARD J. ARCARA**
        **SENIOR UNITED STATES DISTRICT JUDGE**

11

12

    APPEARANCES:

13

    For the Plaintiff:   JAMES P. KENNEDY, JR.

14
                        UNITED STATES ATTORNEY
                        BY:  WEI XIANG, ESQ.

15
                            PAUL PARISI, ESQ.
                        ASSISTANT UNITED STATES ATTORNEYS

16
                        138 Delaware Avenue
                        Buffalo, NY 14202

17

    For the Defendant:   ROBERT ROSS FOGG, ESQ.

18
                        69 Delaware Avenue, Suite 600
                        Buffalo, NY 14202

19

    Probation Officer:   ALEXANDRA PISKORZ

20

    Court Reporter:      MEGAN E. PELKA, RPR

21
                        Robert H. Jackson Courthouse
                        2 Niagara Square

22
                        Buffalo, NY 14202

23

24

25

1          THE CLERK:  Criminal action 2015-CR-33.  United

2    States v. Aaron Hicks.  Oral argument on posttrial motion.

3    Counsel, please state your name and the party you represent

4    for the record.

5          MR. PARISI:  Good morning, Your Honor.  Wei Xiang and

6    Paul Parsi for the government.  Good morning, Your Honor.

7          MR. FOGG:  Good morning, Your Honor.  Robert Ross

8    Fogg for Mr. Aaron Hicks, present in court, Judge.

9          THE COURT:  Good morning.  All right, Mr. Fogg?

10         MR. FOGG:  Your Honor, initially I brought a motion

11   under Rule 29, motion for judgment of acquittal.  That motion

12   was brought, based on the testimony that was presented in our

13   court during the trial.  The trial verdict was undecided, at

14   least a hung jury, as the Court has deemed, with regard to the

15   RICO conspiracy.

16         There was also the conspiracy in three-fold;

17   conspiracy to traffic marijuana, conspiracy to traffic cocaine

18   and cocaine base.  The decision came back on that second count

19   as to guilty with regard to conspiracy to traffic marijuana

20   and marijuana only.

21         My motion was that if that is the case, then it would

22   be a not guilty for conspiracy to traffic cocaine and cocaine

23   base, based on the special verdict form they have.  They also

24   came back and found him not guilty, based on possession of a

25   firearm in furtherance of a violent act.  They found not

1    guilty on that.

2         My motion with regard to Count 2, specific as to

3    the -- I guess, the pattern or the deliberations that we saw

4    in court and that was through the notes submitted to the

5    Court, the difficulty they had.  And they were given readbacks

6    of the government witnesses and still came back and stated

7    that they could not decide.

8         Now, it was apparent then that Count 1, the RICO

9    conspiracy, was what was troubling, because they said they

10   could not even figure out what a gang was.  We asked that they

11   go back and continue to deliberate and that was defendant's

12   request.  And we asked that -- well, they came back and asked

13   for a reading of Mr. Hicks' testimony.  After that, they came

14   up with the decision that he was guilty of conspiring to

15   traffic marijuana.

16        And his testimony was predominantly and basically on

17   the revelations that he had with a gentleman named Coach in

18   Texas.  Now, my argument is that if the jury determined

19   conspiracy to traffic marijuana based on that and those

20   factual patterns, that that is not a conspiracy.

21        And the reason why is that, even though there were

22   several acts that happened, the Coach -- or Coach, that

23   individual, had no interest, no proprietary interest or

24   interest in what Mr. Hicks did with the marijuana that he sold

25   to him.  There was never an upfront given of marijuana, with

1   an expectation of payment on sale.  It was always a direct

2   sale.  So, if that was the case, then that is not a

3   conspiracy.  Those are possessions and sales; sales on the

4   part of Coach, a purchase on the part of my client and not a

5   conspiracy, in and of itself.

6        If we look at the readings -- or at least the

7   instructions of the Court, the Court specifically described

8   and explained to the jurors what they needed to -- or at least

9   the facts that had to come out to determine whether or not

10  there was a conspiracy.

11       And in doing so, the Court reminded them, on several

12  occasions, beyond a reasonable doubt definition and also

13  reminded them that if, in fact, they felt that Mr. Hicks --

14  just to paraphrase -- Mr. Hicks was involved with their

15  conspiracy -- their being the individuals of the RICO

16  conspiracy, that would be Contreras and a few other people --

17  if in fact, he was involved in that, to some degree, then he

18  would also be responsible for the drugs that was anticipated

19  or could have been anticipated; the sales and the transactions

20  that could have been participated or at least anticipated,

21  meaning cocaine and cocaine base, which was the root and the

22  significant part of their testimony and the conspiracies

23  involving this individual.

24       They found him not guilty of conspiracy to traffic

25  cocaine and cocaine base.  And if that's the case, Judge,

U.S. v. HICKS  --  ORAL ARGUMENT                                    4

1   following the Court's instructions, they could not have

2   considered my client to be part of that conspiracy and only

3   the conspiracy that they thought or presumed to be one from

4   this person, Coach.

5          The government put before the jurors the possibility

6   that there was an agreement, there was a sale and that,

7   therefore, there would have been a conspiracy, which is the

8   wrong definition and the wrong objective, as far as the jury

9   is concerned, because any involvement with Coach was not part

10  of the indictment.  He was not charged with that.

11         With regard to the RICO conspiracy, Count 1 -- well,

12  Count 3 we already know that that cannot be retried.  The

13  question then became, can we retry Mr. Hicks on Count 1 with

14  the RICO conspiracy?

15         To my surprise -- and I guess with all great

16  honesty -- the government conceded, with regard to Count 2,

17  that it was a not guilty on a conspiracy to traffic cocaine

18  and cocaine base and that they would be precluded from at

19  least bringing that up in a special verdict form.  I state and

20  I put before the Court, that if, in fact, a jury's

21  determination that he is not guilty, then --

22         THE COURT:  Not guilty of?

23         MR. FOGG:  Cocaine and cocaine conspiracy.  Sorry,

24  Judge.  Then, to retry him on that, in a RICO conspiracy

25  alleging that those same acts -- that would overturn or invade

1    the provenance of that jury, which already came to its

2    determination.

3            So, my position is that if a RICO conspiracy -- which

4    I will concede a RICO conspiracy can be retried -- but if

5    that's the case, the factual allegations involving cocaine

6    trafficking or cocaine base trafficking are factual

7    allegations that cannot be tried and should not be tried

8    because he was already determined not guilty of that, along

9    with the possession of the firearm.

10           Now, can they have a RICO conspiracy involving the

11   marijuana conspiracy that the jury found him guilty?  I say

12   no.  And the reason why is because that, in itself, should not

13   have been a conspiracy.  There was no request to conform to

14   the testimony, the variances.  There was no request to charge

15   a lesser included offense.  There was no charge with regard to

16   possession of marijuana.  So, therefore, they could not bring

17   a RICO conspiracy with regard to cocaine, marijuana, cocaine

18   base trafficking, nor the gun.

19           That being said, Judge, the one other predicate

20   act -- or the two other predicate acts that were put before

21   the jury was that of murder and attempted murder.  They can

22   retry him on those two predicate acts.

23           Now, the problem with that is, we heard the

24   testimony.  I'm not going to say they can or cannot, but we

25   already heard the testimony of the jurors -- of the witnesses.

1    The jurors heard the testimony and he had no involvement in an

2    attempted murder or a murder of anyone and that was through

3    the government's own witnesses, but they're free to retry him

4    on that RICO conspiracy with regard to that and that's through

5    the motions that we put forward.  That's the crux of the

6    issue, notwithstanding the arguments with regard to a special

7    verdict form.

8              That's the essence of what I put before the Court.

9    I've reviewed the government's cases.  A lot of the cases

10   involve state prosecution, which turns out to be not guilty

11   and then a federal prosecution.  And you know, there would be

12   no bar to that prosecution or -- in Federal Court, or there

13   would be federal cases where the RICO conspiracy was

14   undecided.  They wanted to retry that and whether they could.

15             This case is specifically and uniquely different.

16   Here in the one second count, they found him not guilty of the

17   cocaine and cocaine base conspiracy, which were part of the

18   predicate acts that they were trying to prove on the RICO

19   conspiracy, Judge.

20             THE COURT:  What evidence do you want precluded as

21   far as a retrial of Count 1?  What evidence do you want to be

22   precluded?

23             MR. FOGG:  Well, Judge, I believe definitely, because

24   of the third count, any notion of a possession of a firearm.

25   I mean, we had testimony with regard to my client in

1    possession of a firearm, so that would have to be excluded.

2    Any notion that he possessed or attempted to possess, as an

3    accomplice with somebody else's possession of a firearm, that

4    would have to be precluded as well.

5         With regard to trafficking or drugs, the notion that

6    there was a cocaine conspiracy, these things would have to be

7    precluded because the jury specifically found him not guilty

8    of that.  So, therefore, these agreements with regard to

9    trafficking cocaine, the fact there was cocaine.  The

10   government brought in packages and packages upon cocaine.  And

11   that should not be in another trial.  There should be no

12   testimony with regard to whether or not my client was or may

13   have been involved in a cocaine conspiracy -- cocaine base

14   conspiracy.

15        And because of my one motion, which is to -- for this

16   Court to decide, that there was no marijuana conspiracy, but

17   at least a possession, then they would not bring in or be able

18   to bring in any notion of a cocaine or cocaine base and/or

19   marijuana conspiracy.

20        THE COURT:  All right.  Mr. Parisi?

21        MR. PARISI:  Your Honor, the text order indicated

22   that we are here to argue the double jeopardy issues in this

23   and I believe Mr. Fogg is hitting on his initial motion, which

24   was just a Rule 29 motion.  Does the Court wish me to address

25   the Rule 29 on Count 2 or just the double jeopardy?

8

1          THE COURT:  Go to the 29 and then, we'll go to double

2    jeopardy.

3          MR. PARISI:  So, with respect to Mr. Fogg's Rule 29

4    motion to dismiss Count 2, specifically, he's only looking at

5    the testimony of his client.  And despite his statements in

6    his paperwork and here that he is viewing the evidence in a

7    light most favorable to the government, he's only viewing the

8    evidence that his client provided from the witness stand and

9    the government's position is that it was repeatedly

10   controverted, even through the defendant's own statements and

11   that defendant would be incredible.

12         The way to view this actual evidence is through the

13   light most favorable to the government.  And that would be

14   through the testimony of persons like Julio Contreras, Damario

15   James, Luis Zuniga and the Buffalo Police officers and

16   New York State Troopers who testified in this matter and

17   specifically with Julio Contreras and Damario James and Luis

18   Zuniga, who all indicated that they were part of this

19   conspiracy to distribute narcotics.

20         And specifically, Julio Contreras indicated that he

21   was sending marijuana packages through the mail, which was

22   corroborated through testimony from Officer Michael Acquino,

23   who actually found the defendant and Julio Contreras together

24   and also corroborated though the testimony of New York State

25   Police, who found the defendant with 33 pounds of marijuana

1   and cocaine base on his person.  So, viewing this evidence in

2   the light most favorable to the government, there is plenty of

3   evidence to support the jury's verdict that he was guilty of

4   the conspiracy for which he was convicted under Count 2.

5         Turning now to the subject of the double jeopardy and

6   collateral estoppel, what I am gleaning from Mr. Fogg's

7   arguments is that double jeopardy and collateral estoppel are

8   two different issues.  And what I'm understanding is that

9   double -- he's not arguing that double jeopardy doesn't apply.

10  Double jeopardy would be, under the Blockburger test, where

11  the elements of RICO are the same elements as the Count 2

12  conspiracy.

13        And from what I understand, Mr. Fogg is not arguing

14  that double jeopardy is the issue here, that he can't be

15  retried, based on double jeopardy.  And we agree, in fact,

16  that double jeopardy doesn't apply.  The issue in this case is

17  one of collateral estoppel, which is part of double jeopardy.

18        And as noted, that it's the defendant's burden, by

19  providing clear and convincing evidence of the facts that are

20  sought to be foreclosed and resolved against the government,

21  as the jury prior to this trial.  And it's only in the rare

22  situation that collateral estoppel will apply because it's

23  almost impossible to know what the jury based its decision on.

24        This jury found the defendant guilty of a conspiracy

25  and only acquitted on the special sentencing factors with

1   cocaine, cocaine base and cocaine of five kilograms or more.

2          With respect to that, this verdict was not an

3   acquittal of any substantive act.  It was an acquittal of just

4   the conspiracy on those acts.  It wasn't an acquittal of each

5   and every time this defendant trafficked cocaine under

6   21 United States Code, Section 841 on the first time that he

7   met Julio Contreras and where Julio Contreras brought up the

8   16 kilograms of cocaine and on the monthly basis that they had

9   the relationship going for years.

10         It wasn't an acquittal on each and every time that

11  Julio Contreras brought this defendant cocaine or that this

12  defendant then distributed cocaine, or with that respect, any

13  member of the agreement in the RICO conspiracy for their

14  distribution of cocaine or cocaine base.

15         There wasn't a jury acquittal on each and every one

16  of those and it wasn't submitted to the jury, so there's no

17  way to determine, from the jury verdict or from any of the

18  notes of what we have here, what the jury -- if the jury

19  acquitted on one, two or every single substantive act.

20  There's no way to know.  And so, we don't have an acquittal on

21  every substantive act.

22         The evidence that the government seeks to introduce

23  at the next trial is probative and relevant, the cocaine and

24  cocaine base.  Mr. Fogg is arguing that the marijuana

25  conspiracy, even though there was a conviction on it, should

1   not be brought into the second trial.  I'm still not 100

2   percent certain what the argument is on why the marijuana

3   wouldn't be relevant in the second trial at least.  The

4   government maintains that the conviction for the marijuana

5   conspiracy would, of course, mean the marijuana could come

6   into the second trial, based on the evidence that we've

7   already heard.

8            However, the government also maintains that the

9   cocaine and cocaine base testimony should come in, because

10  this is the evidence of the agreement.  This is the evidence

11  that is probative and relevant to the RICO conspiracy, to the

12  membership, to the background evidence, the evidence of the

13  existence of the agreement, the circumstances of the

14  agreement, the effect on interstate commerce, which is one of

15  the elements that's required under RICO, the nature and

16  structure of the agreement, to put the agreement in context

17  and to establish the relationship between the witnesses.

18           The reason that the marijuana became part of the RICO

19  conspiracy or the Count 2 conspiracy, for the Court's

20  information, is because there was a $100,000 cocaine debt that

21  was owed in the beginning.  There was testimony by Julio

22  Contreras and Damario James that an individual who was part of

23  this walked off with $100,000 and they had to make that money

24  back.  And they knew they couldn't do it through cocaine, so

25  they started doing marijuana, going to Detroit to make the

1    $100,000.  So, the motive to even get into the marijuana was

2    the cocaine and cocaine base.

3        And I would note, additionally, under Rule 404(b),

4    that the conduct, the cocaine and cocaine base, should come

5    into evidence.  And I would point the Court to one of the

6    cases I cited in my brief, which is *Dowling v. United States*

7    493 U.S. 342 (1990), but does indicate that even if the Court

8    is considering that acquitted conduct, Rule 404(b) evidence

9    would allow that acquitted conduct to come into trial -- to

10   come into evidence at the next trial on Count 1, establishing

11   all of those factors that I have just listed as Rule 404(b)

12   evidence to explain the RICO conspiracy.

13       THE COURT:  All right.  Mr. Fogg, do you have

14   anything further?

15       MR. FOGG:  Judge, when the government states that the

16   testimony was that of my client and they exclude any defense

17   witness and the only witness that this Court should consider

18   are their own witnesses that they call, that's a misstatement

19   of law.  The fact is, it's not a matter who calls or what

20   witness is whose.  I may call the government's witness as an

21   adverse witness.  It's the testimony.  It's the evidence

22   before the Court.  And that is viewed in the light most

23   favorable to the government.

24       Now, when Hicks was on the stand testifying, they had

25   a full and fair opportunity to cross-examine.  And at that

1   time, Hicks was under their control.  And they controlled all

2   the questions.  They went into it.  I objected very rarely.

3   And they had full and fair opportunity to cross-examine and to

4   talk to Mr. Hicks and explain to the jury and to this Court

5   the basis of their indictment.

6          The fact of the matter is, the Court should also

7   consider witness testimony, including my client.  Now, my

8   client spoke and answered and explained his happenings with

9   this gentleman named Coach and that's the statement and that's

10  the questions that the trial -- that the jury wanted to read

11  back.  And only after that, they came up with the conviction.

12         Before that, they wanted to hear from the

13  government's witness, the involvement with the cocaine.  They

14  wanted to hear back this marijuana debt, but they still came

15  back and found not guilty of a conspiracy to traffic cocaine

16  and cocaine base, even with this notion that they bring up the

17  marijuana and the $100,000 debt.

18         That, Judge, as I put toward the jurors -- and also

19  with regard to Contreras, Contreras had somebody else take

20  over his route.  Contreras had been making deals all over the

21  place.  And that was not a debt to be paid.  That was

22  Contreras trying to compensate for a debt that he owed to the

23  Mexicans.

24         So, also, Contreras's testimony was about him going

25  to Ohio.  He said he went and got the drugs from somebody that

1   he knew, the marijuana.  So, even with that in mind, Judge,

2   the only conspiracy that came back was after the cross-

3   examination that they read back, from the government, of

4   Mr. Hicks.  And that was all about Coach.  They decided there

5   was a conspiracy with Coach.

6          Because if they'd listened to your instructions, any

7   conspiracy with these other gentlemen would also include being

8   guilty by an accomplice with the other cocaine, the other

9   cocaine base and the other marijuana, which there was very

10  little discussions of.  So, they did not find him guilty.

11  They found him not guilty of that.  They found him not guilty

12  of cocaine and cocaine base conspiracies.

13         Now, it's my position, on behalf of Mr. Hicks, that

14  the testimony was clear.  They had a fair and a full

15  opportunity to review all the evidence, outside of the

16  manifest necessity, outside of the special verdict sheet.

17  They had a full and fair opportunity to review all the

18  evidence and they came back with just cocaine conspiracy, not

19  guilty.  Cocaine base conspiracy, not guilty.  And only of

20  cocaine -- excuse me -- marijuana conspiracy and that's it.

21         But that's based on -- and like I said, Judge, if you

22  review the discussions and the deliberations and if you review

23  your instructions to them, which happened repeatedly, it could

24  only be that the jurors and -- you know, the government says

25  you can't know what they were thinking.  Yes, we can.  He's

1   not guilty of conspiracy to traffic cocaine and cocaine base.

2   And yes, we can.  He's guilty of trafficking marijuana.  Look

3   at the procedure.  Look at the rule.  The only thing anyone

4   can come to the conclusion, it's Coach.  If that's the case,

5   it's not a conspiracy.  It's possession.

6          THE COURT:  Anything further, Mr. Parisi?

7          MR. PARISI:  Yes, Your Honor.  I'd just like to note,

8   with respect to Count 1, which is a RICO conspiracy, those are

9   not substantive predicate acts that he has been acquitted of

10  or that -- at the first trial.  It's a RICO conspiracy, with

11  the multiple acts involving the trafficking of controlled

12  substances, including cocaine, cocaine base, heroin and

13  marijuana, in violation of Title 21, United States Code,

14  Section 841, as charged in the indictment.  He's charged with

15  those substantive acts.  And I would just note, again, there

16  was no determination by the jury on this.

17         THE COURT:  All right.  Now, we're going to have

18  another trial, I guess, in this matter.

19         MR. PARISI:  I believe we will.  However, we have

20  been in plea negotiations.  I would -- with the Court's

21  permission, I would like to put that on the record and maybe

22  have a status conference to determine if there will be a

23  resolution.

24         MR. FOGG:  Judge, I don't believe a plea decision

25  should be placed on the record.  Right now, what I have

1   received was a note, an email from the government, proposing a

2   possible way to resolve it.  I have to present that to my

3   client.  I don't think we need to put that on the record.

4           THE COURT:  All right.  I'll go along with Mr. Fogg

5   with that at this point in time.

6           MR. PARISI:  Well, Your Honor, may we have a status

7   conference so that we can -- because we need to eventually put

8   this on the record and have --

9           THE COURT:  Oh, no, I understand that.  I understand

10  that, but I don't think we have to do it today.  So, assume

11  for purposes of scheduling, we have another trial, what's the

12  availability of counsel?

13          MR. FOGG:  Your Honor, I don't have my calendar in

14  front of me, but from the looks of the next two or three

15  months, I am quite congested.  Things are freeing up, but I am

16  quite congested.  I do know in May, there's nothing that has

17  been put off until May.  And if there is, it is early enough

18  where I could have it changed.

19          MR. PARISI:  I have one short trial in front of Judge

20  Vilardo the week of May 8th.  After that, I am totally free.

21  I believe Mr. Xiang is free as well.

22          MR. FOGG:  I'm also, I guess, in front of Vilardo.  I

23  believe the government is trying to kick me off another case,

24  Judge, but that's something I'll have to discuss.

25          THE COURT:  I guess it's because they consider you a

1    worthy advocate.

2            MR. FOGG:  That's all right.  I enjoy it.

3            THE COURT:  Just let me check one thing.  I'll be

4    right back.  I want to see what my calendar looks like.

5            THE CLERK:  All rise.

6    (Brief recess)

7            THE CLERK:  All rise.

8            THE COURT:  I'm going try to get a decision out

9    within the next two or three weeks and once I get the decision

10   out, then the speedy trial clock will start again.  There's

11   no -- up and to this point in time, it's -- there's zero

12   speedy trial days.  Everything is still in the 70 days.

13           In view of what Mr. Fogg just said, that he wouldn't

14   be available until the middle of May, it may not be a bad idea

15   to exclude the time between now and the middle of May, if we

16   set a trial date.  So, that way, we don't have to worry about

17   a speedy trial issues.

18           MR. FOGG:  Well, you know, Judge --

19           THE COURT:  Do you agree or --

20           MR. FOGG:  I would always love to worry about speedy

21   trial issues.

22           THE COURT:  Well, I know, but that's my

23   responsibility.  And so, the earliest you -- I was thinking,

24   maybe middle of May, would that be a period of time that you

25   would be available?

1          MR. FOGG:  From looking at the calendar in my mind, I

2    would say yes, but what I can do is have my secretary, Carol,

3    contact your chambers.

4          THE COURT:  Well, we're going to set a date today.  I

5    want to set a date.  If there's an issue, let me know and I'll

6    bring you back.

7          MR. FOGG:  Okay.

8          THE COURT:  I want to set a date now.  And I want to

9    make sure everybody is on all fours, as far as excludable

10   time, because the issue here is your availability, because

11   you've got a number of trials between now and May, as you just

12   indicated to me.

13         MR. FOGG:  Yeah.  I seem to have a lot of trials in

14   February and a couple will be in, sporadic, in April.

15         THE COURT:  But you indicated to me that your

16   availability would be sometime in the middle of May.

17         MR. FOGG:  I believe so, Judge.

18         THE COURT:  Okay.

19         THE CLERK:  Judge, May 22nd at 9:30 for jury

20   selection.  And then final pretrial conference, May 17th at

21   2 p.m.

22         THE COURT:  As far as excluding time?

23         MR. PARISI:  The government has an application, under

24   18 United States Code, Section 3161 (h)(7)(A), to exclude the

25   time between now and May 22nd, 2018 in this matter, in the

1  interest of justice and to allow continuity of counsel.

2  Mr. Fogg's trial calendar precludes him from being ready

3  during the period of time until we can start this trial.

4        MR. FOGG:  Judge, I'll just enter an objection, but I

5  understand the Court's position on that.

6        THE COURT:  You are objecting?

7        MR. FOGG:  Yes, Your Honor.

8        THE COURT:  What's your grounds?

9        MR. FOGG:  The grounds would be that --

10       THE COURT:  You want a trial next week?  What do you

11 want me to do?

12       MR. FOGG:  You know, the problem is, Judge, is that

13 if I can get to the Court and explain to them and figure out

14 what dates are truly available.  The problem that I have is

15 that I don't have a calendar right here.

16       THE COURT:  Where is your calendar?

17       MR. FOGG:  My calendar is on my cell phone, which I

18 can't bring.

19       THE COURT:  All right.  We'll exclude it.  Well,

20 let's take a break and come on back up and tell me.

21       MR. FOGG:  I'd have to go to the office to get it

22 because I leave it there.

23       THE COURT:  Whatever.  I'm here all day.  Whenever

24 you get back.  And the U.S. Attorneys Office, you'll be

25 available all day, right?

```
1              MR. PARISI:  Yes, Your Honor.

2              THE COURT:  Okay.

3              MR. FOGG:  How soon would the Court like to --

4              THE COURT:  Whenever you're available.  I'm here all

5    day.

6              MR. FOGG:  All right.

7              THE COURT:  Today.  Tonight.  I don't care.  Whenever

8    it's convenient for you.

9              MR. FOGG:  That will be fine.  What I'll do is I'll

10   go straight there and come right back.

11             THE COURT:  Where is your office?

12             MR. FOGG:  It's right across the street.  The BAC

13   Building, ABC Building.

14             THE COURT:  That's fine.  Okay.

15             MR. FOGG:  It's just a wet walk.

16             THE COURT:  Okay.  Take your time.  Don't fall.  It's

17   slippery out there.

18   (Brief recess)

19             THE CLERK:  All rise.

20             THE COURT:  As far as a trial date, Mr. Fogg, you

21   were going to check your calendar.  That's okay.  Mr. -- he

22   doesn't to be here.  Everybody just stay where they are.

23             MR. FOGG:  Yes, Judge, I did.

24             THE COURT:  And?

25             MR. FOGG:  The boss in my office, Carol, she has told
```

1    me that I'm available February 15th to the 27th.

2         THE COURT:  What date?

3         MR. SCHWARTZ:  February 15th.  I'm also available

4    March 5th, starting March 5th up until about the 16th.  April

5    is the month that I'm not available and then, in May, I can

6    start May 1st all the way to about the 25th.

7         THE COURT:  I think we were talking about May 22nd.

8         MR. FOGG:  Yeah.  We were talking about May 22nd

9    because I said my calendar may be available around that time,

10   but the Court was inquiring if I had an earlier date, because

11   I objected to it and I can start on the 15th of February.

12        THE COURT:  Well, I got --

13        MR. FOGG:  And if starting on the 15th of February,

14   it could be the 19th of February, but if that's not sufficient

15   for the government or for the Court, I would be available

16   March, March 5th.

17        THE COURT:  I have some other trials in February.

18        MR. XIANG:  Your Honor, I think the issue with

19   February is that, as we understand it, the Court's decision

20   regarding this issue -- we can't have the retrial without

21   knowing what's going on.

22        THE COURT:  The decision.  So, that doesn't apply.

23        MR. XIANG:  Right.  So --

24        THE COURT:  And I have 30 days in which --

25        MR. XIANG:  Yes, Judge.

1          THE COURT:  I'll tell you what were going to do.

2    Rather than set a date today --

3          MR. FOGG:  May we have a just to come back?

4          THE COURT:  Let me have a date.  Let's have a date --

5    let me check my calendar.  Just let me check my calendar.

6    Court will be recess.

7          THE CLERK:  All rise.

8    (Brief recess)

9          THE CLERK:  All rise.

10          THE COURT:  Let's set it for February 22nd at 9

11    o'clock for -- I'll have a decision before that date.  So,

12    let's have a status conference on the 22nd as a matter of law,

13    because I have 30 days in which to file a decision, but that

14    period of time is excluded up to February 22nd.

15          MR. FOGG:  Understand, Judge.  The calendar may

16    change, but for now, that's what I've got.

17          THE COURT:  We've got too many I'm available, I'm not

18    available, it gets a little bit -- I think we'll have a

19    clearer picture then.

20          MR. XIANG:  Yes, Judge.

21          THE COURT:  How long will a retrial last?

22          MR. XIANG:  Well, Judge, I think it depends on the

23    evidence that we'll be able to admit.

24          THE COURT:  What's the ballpark figure?

25          MR. XIANG:  Well, the last time, it took two and a

U.S. v. HICKS  -- ORAL ARGUMENT

23

1    half weeks.  I don't exact more than that, so probably about

2    two weeks total.

3              THE COURT:  All right.  Okay.  Good.  Thank you.

4              MR. FOGG:  Judge, one other thing.  If we're going to

5    retry, I'm going to ask for the 3500 material, all the

6    testimony that was at the last trial to be provided by the

7    government to me.  Even if it is available, I'm asking that

8    they would turn it over to me.

9              MR. XIANG:  Judge, we don't have it.  So, I mean, it

10   was publicly --

11             MR. FOGG:  I'm asking that they turn over 3500

12   material, which would mean they would have to turn that over.

13             THE COURT:  I don't think so.  That's not 3500

14   material

15             MR. FOGG:  I'm asking for it.

16             THE COURT:  Well, you have to -- you can order it.

17             MR. FOGG:  Yes.

18             THE COURT:  You can order it.

19             MR. FOGG:  I'll put in a request.

20             THE COURT:  Well, I'm not sure we're on the same

21   wavelength.

22             MR. FOGG:  We can discuss that later.

23             THE COURT:  All right.  We'll deal with that.

24             MR. FOGG:  Are you done with me today?

25             THE COURT:  Pardon me?

U.S. v. HICKS  --  ORAL ARGUMENT

24

1           MR. FOGG:  Are you done with me?

2           THE COURT:  I am done.  Yes.  Thank you.  We'll take

3    a two-minute recess so I can re-orient myself.

4           THE CLERK:  All rise.

5    (Brief recess)

25

1                *    *    *    *    *    *    *

2

3            I certify that the foregoing is a

4        correct transcription of the proceedings

5        recorded by me in this matter.

6

7

8

9                            s/ Megan E. Pelka, RPR

10                           Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25