1      **UNITED STATES DISTRICT COURT**
       **WESTERN DISTRICT OF NEW YORK**
2
  UNITED STATES OF AMERICA,        )
3                                   ) Case No. 1:15-CR-00033-3
                                    )            (RJA)(HBS)
4                  Plaintiff,       )
                                    )
5  vs.                             ) September 23rd, 2022
                                    ) 10:10 a.m.
6  RODERICK ARRINGTON,             )
                                    )
7                  Defendant.       )

8              **TRANSCRIPT OF CONTINUATION OF**
           **JURY TRIAL TESTIMONY OF HENRY LLOYD**
9        **BEFORE THE HONORABLE RICHARD J. ARCARA**
             **SENIOR UNITED STATES DISTRICT JUDGE**
10

11  <u>APPEARANCES</u>:

12  For the Plaintiff:    TRINI E. ROSS, ESQ.
                          UNITED STATES ATTORNEY
13                        BY:  JEREMIAH LENIHAN, ESQ.
                          ASSISTANT UNITED STATES ATTORNEY
14                        138 Delaware Avenue
                          Buffalo, NY 14202
15
                          U.S. DEPARTMENT OF JUSTICE
16                        ORGANIZED CRIME SECTION
                          BY:  JULIE ANN FINOCCHIARO, ESQ.
17                        1301 New York Avenue, NW
                          Suite 7th Floor
18                        Washington, DC 20530

19  For the Defendant:    RODERICK ARRINGTON, PRO SE

20  Stand-by counsel:     MARK A. FOTI, ESQ.
                          16 W. Main Street, Suite 100
21                        Rochester, NY 14614

22  Court Reporter:       MEGAN E. PELKA, RPR
                          Robert H. Jackson US Courthouse
23                        2 Niagara Square
                          Buffalo, NY 14202
24                        (716) 364-6449

25

LLOYD -- BY MR. LENIHAN -- 09/23/2022

1

| | | |
|---|---|---|
| | 1 | (The jury was present in the room at 10:10 a.m.) |
| | 2 | |
| | 3 | CONTINUATION OF DIRECT EXAMINATION |
| 10:10AM | 4 | |
| 10:10AM | 5 | BY MR. LENIHAN: |
| 10:10AM | 6 | Q.  Good morning, Mr. Lloyd. |
| 10:10AM | 7 | A.  Good morning. |
| 10:10AM | 8 | Q.  Now, we were talking about, when we first left off |
| 10:10AM | 9 | yesterday, about you having conversation with Mr. Arrington. |
| 10:10AM | 10 | A.  Yes. |
| 10:10AM | 11 | Q.  Did Mr. Arrington ever tell you how he made money? |
| 10:10AM | 12 | A.  Yes. |
| 10:10AM | 13 | Q.  What did he say? |
| 10:10AM | 14 | A.  He sold drugs. |
| 10:10AM | 15 | Q.  Anything else? |
| 10:10AM | 16 | A.  Yeah.  And he take hits. |
| 10:10AM | 17 | Q.  Now, you've cooperated previously with the government? |
| 10:10AM | 18 | A.  Yes. |
| 10:10AM | 19 | Q.  Prior to your -- actually, strike that.  And was it known |
| 10:11AM | 20 | that you had cooperated with the government previously? |
| 10:11AM | 21 | A.  Yes. |
| 10:11AM | 22 | Q.  Did Mr. Arrington become to trust you? |
| 10:11AM | 23 | A.  Yes. |
| 10:11AM | 24 | Q.  To your knowledge, why did he begin to trust you? |
| 10:11AM | 25 | A.  Because my previous case that I -- |

10:11AM  1          THE DEFENDANT:  Objection, Your Honor.

10:11AM  2          THE COURT:  Overruled.  It's the perception of the

10:11AM  3  witness.  702.  Go ahead.

10:11AM  4          THE WITNESS:  He seen on my previous case that I went

10:11AM  5  to trial, and I didn't cooperate with the government on that

10:11AM  6  case.  So, that gave me some -- a little bit more credibility

10:11AM  7  from what I've done in the past from cooperating with the

10:11AM  8  government.

10:11AM  9  BY MR. LENIHAN:

10:11AM  10  Q.  And was in 2020?

10:11AM  11  A.  Yes.

10:11AM  12  Q.  Where you went to trial?

10:11AM  13  A.  Yes.

10:11AM  14  Q.  Did Mr. Arrington, in this timeframe in March, April of

10:11AM  15  2022, do you know if he was obtaining any discovery?

10:11AM  16  A.  Yes.

10:11AM  17  Q.  Can you describe what you knew about that?

10:11AM  18  A.  The discovery he obtained, I want to say he was already

10:12AM  19  over there some time in April, April 2022.  And he had

10:12AM  20  learned -- he got some discovery, had to go to the classroom

10:12AM  21  to look at it, and go through it, and he would come back and

10:12AM  22  talk to me about what he seen in the discovery.

10:12AM  23  Q.  What did he tell you he saw?

10:12AM  24  A.  He said the only new information that he seen in

10:12AM  25  discovery was about a homicide that was committed and some

| | | |
|---|---|---|
| 10:12AM | 1 | individuals had said that he did it. |
| 10:12AM | 2 | Q.  Any letters he talked about? |
| 10:12AM | 3 | A.  Yes.  He said about a letter from Jerome Grant. |
| 10:12AM | 4 | Q.  And do you remember when you told the government this |
| 10:12AM | 5 | information? |
| 10:12AM | 6 | A.  May 2nd, 2022. |
| 10:12AM | 7 | Q.  Did he discuss anything about a drug ledger? |
| 10:12AM | 8 | A.  No.  Never told me anything about that. |
| 10:12AM | 9 | Q.  So, in 2020, you were convicted in this court? |
| 10:13AM | 10 | A.  Yes. |
| 10:13AM | 11 | Q.  And since then, have you wrote letters to the Court? |
| 10:13AM | 12 | A.  Yes. |
| 10:13AM | 13 | Q.  Have you wrote letters to me? |
| 10:13AM | 14 | A.  Yes. |
| 10:13AM | 15 | Q.  And what's the general tenor of those letters? |
| 10:13AM | 16 | A.  In the beginning, the first letters was about my trial, |
| 10:13AM | 17 | about government misconduct, that I thought the government |
| 10:13AM | 18 | committed misconduct, about bringing my previous co-defendant |
| 10:13AM | 19 | to my trial name of Tyrone Pennick, and also releasing my |
| 10:13AM | 20 | proffers from the when I cooperated in the past. |
| 10:13AM | 21 | Q.  Were you upset with the government at that point? |
| 10:13AM | 22 | A.  Yes, I was. |
| 10:13AM | 23 | Q.  And what's your belief now? |
| 10:13AM | 24 | A.  I believe that it was just part of the strategy of you |
| 10:13AM | 25 | guys fighting your case and me and my attorney fighting my |

| 10:13AM | 1 | case. |

10:13AM 1 case.

10:13AM 2 Q.  And what are you hoping to get out of you testifying here

10:13AM 3 today?

10:13AM 4 A.  A downward departure for my sentencing.

10:13AM 5 Q.  Do you know who ultimately decides that?

10:13AM 6 A.  The Judge.

10:13AM 7 Q.  Do you know what's required of you in order to for the

10:14AM 8 Judge to0?

10:14AM 9 A.  Be fully cooperative and honest.

10:14AM 10        MR. LENIHAN:  No further questions.

10:14AM 11        THE COURT:  All right.  We'll take a five-minute

10:14AM 12 recess, ladies and gentlemen.  Sir, you can go back.

10:14AM 13        THE CLERK:  All rise.

10:14AM 14 (The jury left the room at 10:14 a.m.)

10:15AM 15        THE COURT:  We'll start cross at 10:25.  Court will

10:15AM 16 be in recess.

10:15AM 17        THE CLERK:  All rise.

10:24AM 18 (A recess was taken from 10:15 a.m. to 10:24 a.m.)

10:24AM 19 (The jury entered the room at 10:24 a.m.)

10:24AM 20        THE CLERK:  All rise.  You may be seated.

10:26AM 21        THE COURT:  All right.  Mr. Arrington?

10:26AM 22        THE DEFENDANT:  Yes, sir.

10:26AM 23

24

25

|  |  |  |
|--|--|--|
|  | 1 | CROSS-EXAMINATION |
|  | 2 |  |
|  | 3 | BY THE DEFENDANT: |
| 10:27AM | 4 | Q.  How are you doing, Mr. Lloyd? |
| 10:27AM | 5 | A.  How are you doing, Mr. Arrington? |
| 10:27AM | 6 | Q.  Can you explain to the jury what the law library on the |
| 10:27AM | 7 | kiosk is for and why are they set up in county jails? |
| 10:27AM | 8 | A.  The kiosk in the law library is set up for you to |
| 10:27AM | 9 | research case law to best fit your argument when you file |
| 10:27AM | 10 | motions. |
| 10:27AM | 11 | Q.  Okay.  And on the law library, is there cases and appeals |
| 10:27AM | 12 | and other case laws on there for pretrial detainees to have |
| 10:27AM | 13 | access to to file motions and to be able to cite case law for |
| 10:27AM | 14 | their oral arguments and for other motions? |
| 10:27AM | 15 | A.  Yes. |
| 10:27AM | 16 | Q.  Is it fair to say that once a person went to trial, and |
| 10:27AM | 17 | that conviction get overturned, and that case is remanded by |
| 10:27AM | 18 | a higher court back to the district for a new trial, that |
| 10:28AM | 19 | whole case will be on the law library as public information |
| 10:28AM | 20 | correct? |
| 10:28AM | 21 | MR. LENIHAN:  Objection. |
| 10:28AM | 22 | THE COURT:  Sustained. |
| 10:28AM | 23 | THE DEFENDANT:  Rephrase the question, Your Honor? |
| 10:28AM | 24 | BY THE DEFENDANT: |
| 10:28AM | 25 | Q.  So, when you get your new case law off the kiosk, you |

LLOYD -- BY THE DEFENDANT -- 09/23/2022

6

| | | |
|---|---|---|
| 10:28AM | 1 | will be able to see anybody appeals? |
| 10:28AM | 2 | A.  Yes. |
| 10:28AM | 3 | Q.  And in those case law, it be precedent for those cases |
| 10:28AM | 4 | winning appeals, correct? |
| 10:28AM | 5 | A.  Yes. |
| 10:28AM | 6 | Q.  And you can go in there any time of the day and research |
| 10:28AM | 7 | and look up that case law for anybody that want an appeal, |
| 10:28AM | 8 | correct? |
| 10:28AM | 9 | A.  Yes. |
| 10:28AM | 10 | Q.  Okay.  So, say, for instance, if my case is on the law |
| 10:29AM | 11 | library, that mean my whole case is exposed to anyone, |
| 10:29AM | 12 | because my case is new case law and anybody can have access |
| 10:29AM | 13 | to that information, correct? |
| 10:29AM | 14 | A.  Yes. |
| 10:29AM | 15 | Q.  So, if you go on the computer on the law library, you can |
| 10:29AM | 16 | go in there and read my whole case, correct? |
| 10:29AM | 17 | A.  Yes. |
| 10:29AM | 18 | Q.  You done that before, right? |
| 10:29AM | 19 | A.  Yes. |
| 10:29AM | 20 | Q.  And you read my appeal and it have everything in there, |
| 10:29AM | 21 | correct? |
| 10:29AM | 22 | MR. LENIHAN:  Objection. |
| 10:29AM | 23 | THE COURT:  Sustained. |
| 10:29AM | 24 | BY THE DEFENDANT: |
| 10:29AM | 25 | Q.  You read my case law, correct? |

| | | |
|---|---|---|
| 10:29AM | 1 | A.  Yes, I did. |
| 10:29AM | 2 | Q.  Pertaining to this case, correct? |
| 10:29AM | 3 | A.  Yes, I did. |
| 10:29AM | 4 | Q.  And it explains in great details of -- all the charges, |
| 10:29AM | 5 | what I was charged with, what I was accused of.  It explains |
| 10:29AM | 6 | all that inside the case law, correct? |
| 10:30AM | 7 | A.  Yes, it do. |
| 10:30AM | 8 | Q.  Okay.  Is it fair to say that you go on the kiosk all day |
| 10:30AM | 9 | every day checking, looking up case laws, and checking to see |
| 10:30AM | 10 | what's new, what got overturned? |
| 10:30AM | 11 | A.  Yes.  That's all I do all day. |
| 10:30AM | 12 | Q.  Okay.  Is my name new case law for this district, United |
| 10:30AM | 13 | States v. Arrington, and why? |
| 10:30AM | 14 | MR. LENIHAN:  Objection. |
| 10:30AM | 15 | THE COURT:  Sustained. |
| 10:30AM | 16 | BY THE DEFENDANT: |
| 10:31AM | 17 | Q.  Okay.  So, is it fair to say you read my case on the |
| 10:31AM | 18 | kiosk on many occasions, correct? |
| 10:31AM | 19 | A.  Yes. |
| 10:31AM | 20 | Q.  Explain to the jury when you went to trial and what was |
| 10:31AM | 21 | your verdict. |
| 10:31AM | 22 | A.  I went to trial in -- I think it started August 19th and |
| 10:31AM | 23 | ended September 2nd, 2020.  And the verdict was guilty. |
| 10:31AM | 24 | Q.  And what you get found guilty of? |
| 10:31AM | 25 | A.  Five hundred grams or more of cocaine. |

LLOYD -- BY THE DEFENDANT -- 09/23/2022

8

| | | |
|---|---|---|
| 10:31AM | 1 | Q.  Was you on probation at the time? |
| 10:32AM | 2 | A.  Yes. |
| 10:32AM | 3 | Q.  You was on supervised release, right? |
| 10:32AM | 4 | A.  Yes. |
| 10:32AM | 5 | Q.  And you was up under a cooperation agreement, correct? |
| 10:32AM | 6 | A.  Yes. |
| 10:32AM | 7 | Q.  And up under those conditions, you cooperation agreement, |
| 10:32AM | 8 | you was not supposed to get in any trouble, correct; or leave |
| 10:32AM | 9 | the state without getting permission from your parole |
| 10:32AM | 10 | officer, correct? |
| 10:32AM | 11 | A.  That's not under the agreement, under the plea agreement. |
| 10:32AM | 12 | You -- |
| 10:32AM | 13 | Q.  So, you can commit crimes on -- |
| 10:32AM | 14 | A.  No, you cannot commit crimes, but it's not in the plea |
| 10:32AM | 15 | agreement. |
| 10:32AM | 16 | Q.  So, the conditions, when you have a cooperation |
| 10:32AM | 17 | agreement, you saying that, your testimony right now, is that |
| 10:32AM | 18 | you stating that one of the conditions is you can commit |
| 10:32AM | 19 | crimes? |
| 10:32AM | 20 | A.  No.  You cannot commit crimes. |
| 10:32AM | 21 | Q.  But -- okay.  So, is one of the conditions that you can't |
| 10:33AM | 22 | get in trouble; no arrests, commit any crimes, correct?  If I |
| 10:33AM | 23 | show you your plea agreement, would that refresh your |
| 10:33AM | 24 | recollection? |
| 10:33AM | 25 | A.  Yes. |

LLOYD -- BY THE DEFENDANT -- 09/23/2022

9

| | | |
|---|---|---|
| 10:34AM | 1 | THE DEFENDANT:  Can I mark this as an exhibit, |
| 10:34AM | 2 | Defendant's Exhibit Number 1, plea agreement? |
| 10:34AM | 3 | THE COURT:  I don't think that's -- |
| 10:34AM | 4 | THE DEFENDANT:  I have my own. |
| 10:34AM | 5 | THE COURT:  I don't think it's Exhibit Number 1. |
| 10:34AM | 6 | What is the exhibit number? |
| 10:34AM | 7 | THE DEFENDANT:  No, this is my exhibit.  I want to |
| 10:34AM | 8 | mark it. |
| 10:34AM | 9 | THE COURT:  Yeah, but there's already been some |
| 10:35AM | 10 | defense exhibits.  I don't know what -- well, what exhibit |
| 10:35AM | 11 | number would that be?  What exhibit is that?  Defendant's |
| 10:35AM | 12 | Exhibit? |
| 10:35AM | 13 | (An off-the-record discussion was held.) |
| 10:35AM | 14 | THE COURT:  This is the first Defendant's Exhibit?  I |
| 10:35AM | 15 | thought there was another one.  All right.  We'll mark it |
| 10:35AM | 16 | Defendant's Exhibit 1. |
| 10:36AM | 17 | (Defendant's Exhibit 1 was marked for identification.) |
| 10:37AM | 18 | |
| 10:37AM | 19 | BY THE DEFENDANT: |
| 10:37AM | 20 | Q.  Did I refresh your recollection? |
| 10:37AM | 21 | A.  Give me a chance to read it, please. |
| 10:37AM | 22 | THE COURT:  Take your time and read it. |
| 10:37AM | 23 | BY THE DEFENDANT: |
| 10:37AM | 24 | Q.  You' been handed Defense Exhibit Number 1.  It's on page |
| 10:38AM | 25 | 13, line 27.  Let me know when you done reading it? |

| | | |
|---|---|---|
| 10:38AM | 1 | A.  It say up to the date until the defendant is sentenced. |
| 10:38AM | 2 | My crime happened after I was sentenced. |
| 10:38AM | 3 | Q.  But it still says up under that -- |
| 10:38AM | 4 | A.  Under the plea agreement.  You said supervised release. |
| 10:38AM | 5 | Q.  The cooperation part.  That's the cooperation part. |
| 10:38AM | 6 | A.  Yes.  It says number 13, line 7 is the conditions of this |
| 10:38AM | 7 | agreement that up through the -- |
| 10:38AM | 8 | THE COURT:  Don't read it.  Just look it over and |
| 10:38AM | 9 | answer the question he poses. |
| 10:39AM | 10 | THE WITNESS:  Can you rephrase your question to me |
| 10:39AM | 11 | again, please? |
| 10:39AM | 12 | BY THE DEFENDANT: |
| 10:39AM | 13 | Q.  I said, when you took your plea agreement, and you came |
| 10:39AM | 14 | into agreement for cooperation with the government, they gave |
| 10:39AM | 15 | you 5K1, correct? |
| 10:39AM | 16 | A.  Correct. |
| 10:39AM | 17 | Q.  That mean you work for the government any time they need |
| 10:39AM | 18 | you, testify at trials, cooperate fully? |
| 10:39AM | 19 | A.  Yes. |
| 10:39AM | 20 | Q.  And while you're on that agreement, there's conditions |
| 10:39AM | 21 | that you don't commit any crimes, correct? |
| 10:39AM | 22 | A.  Yes. |
| 10:39AM | 23 | Q.  Okay.  You committed a crime after that correct? |
| 10:39AM | 24 | A.  After I was sentenced. |
| 10:39AM | 25 | Q.  You committed a crime, correct? |

| | | |
|---|---|---|
| 10:39AM | 1 | A.  Yes. |
| 10:39AM | 2 | Q.  Okay.  And you went to Texas and committed crimes, |
| 10:39AM | 3 | cocaine? |
| 10:39AM | 4 | A.  Yes. |
| 10:39AM | 5 | Q.  Money? |
| 10:39AM | 6 | A.  Yes. |
| 10:39AM | 7 | Q.  At the hotel?  How much money you get caught with at the |
| 10:39AM | 8 | hotel? |
| 10:39AM | 9 | MR. LENIHAN:  Objection, Judge.  It's 608(b). |
| 10:40AM | 10 | Specific instances. |
| 10:40AM | 11 | THE COURT:  Overruled.  I'll allow it. |
| 10:40AM | 12 | THE WITNESS:  I never got caught with any money at |
| 10:40AM | 13 | the hotel. |
| 10:40AM | 14 | BY THE DEFENDANT: |
| 10:40AM | 15 | Q.  How much money did they confiscate at the hotel -- well, |
| 10:40AM | 16 | airport? |
| 10:40AM | 17 | A.  Fifteen thousand. |
| 10:40AM | 18 | Q.  Fifteen thousand? |
| 10:40AM | 19 | A.  From my possession, yes. |
| 10:40AM | 20 | Q.  The total the amount of money they collected from you and |
| 10:40AM | 21 | individuals? |
| 10:40AM | 22 | A.  Sixty-four thousand. |
| 10:40AM | 23 | Q.  Okay.  And what year did you take your plea agreement? |
| 10:40AM | 24 | A.  2012.  June 2012. |
| 10:40AM | 25 | Q.  Okay.  And right after that, you was called in to testify |

| | | |
|---|---|---|
| 10:40AM | 1 | at Jerry Rodney's trial, correct? |
| 10:40AM | 2 | A.  Not right after.  Two years later. |
| 10:40AM | 3 | Q.  But during that time, you was called in to testify at |
| 10:41AM | 4 | Jerry Rodney's trial, correct? |
| 10:41AM | 5 | A.  Yes. |
| 10:41AM | 6 | Q.  To get some time off, correct? |
| 10:41AM | 7 | A.  Yes.  It was part of my plea agreement. |
| 10:41AM | 8 | Q.  Okay.  And they gave you a slap on the wrist, correct? |
| 10:41AM | 9 | A.  No.  No, they did not.  I was in custody. |
| 10:41AM | 10 | Q.  And in 2012, June 14th, you was indicted for conspiracy |
| 10:41AM | 11 | to commit money laundering, correct. |
| 10:41AM | 12 | A.  I was not indicted.  It was a pre-indictment plea I took. |
| 10:41AM | 13 | Q.  But that's a plea -- an indictment plea, correct? |
| 10:41AM | 14 | A.  Yes. |
| 10:41AM | 15 | Q.  But you was originally charged with 848 kingpin status |
| 10:41AM | 16 | with Tyrone Pennick, right? |
| 10:41AM | 17 | A.  No, sir. |
| 10:41AM | 18 | Q.  You was never indicted on a case with Tyrone Pennick for |
| 10:41AM | 19 | drug conspiracy? |
| 10:41AM | 20 | A.  I was on a criminal complaint, not an indictment. |
| 10:42AM | 21 | Q.  And you agreed to cooperate the same day so you wouldn't |
| 10:42AM | 22 | get indicted, and you took a plea to the criminal conspiracy |
| 10:42AM | 23 | to commit money laundering, correct? |
| 10:42AM | 24 | A.  I don't understand your question.  Could you rephrase |
| 10:42AM | 25 | that, please? |

LLOYD -- BY THE DEFENDANT -- 09/23/2022

13

| | | |
|---|---|---|
| 10:42AM | 1 | Q.  I said that when you was up under the criminal complaint |
| 10:42AM | 2 | for drug conspiracy with Tyrone Pennick? |
| 10:42AM | 3 | A.  Yes. |
| 10:42AM | 4 | Q.  In order for you not to get indicted on that case, which |
| 10:42AM | 5 | was kingpin 848 charges that they was going to bring down, |
| 10:42AM | 6 | you cooperated with the government and you took a one-count |
| 10:42AM | 7 | conspiracy to commit money laundering, correct? |
| 10:42AM | 8 | A.  On a criminal complaint.  I think I was number 15.  I was |
| 10:42AM | 9 | already in federal custody when the charges got brung.  The |
| 10:42AM | 10 | only ones that was charged with 848 was Rodney Hill -- |
| 10:43AM | 11 | Q.  That wasn't my question. |
| 10:43AM | 12 | MR. LENIHAN:  He's interrupting the witness, Your |
| 10:43AM | 13 | Honor. |
| 10:43AM | 14 | THE COURT:  Well, ask the next question |
| 10:43AM | 15 | Mr. Arrington. |
| 10:43AM | 16 | BY THE DEFENDANT: |
| 10:43AM | 17 | Q.  In 2012, you was on probation still, correct? |
| 10:43AM | 18 | A.  Yes. |
| 10:43AM | 19 | Q.  November 29, 2012, you was still on supervised release, |
| 10:43AM | 20 | correct? |
| 10:43AM | 21 | A.  Yes. |
| 10:43AM | 22 | Q.  And do you remember kicking in Amaja (phonetic) Anderson |
| 10:43AM | 23 | basement window? |
| 10:43AM | 24 | A.  Yes. |
| 10:43AM | 25 | Q.  And you remember going over there threatening and arguing |

LLOYD -- BY THE DEFENDANT -- 09/23/2022
14

| | | |
|---|---|---|
| 10:43AM | 1 | and trying to fight while you were on probation?  You went to |
| 10:43AM | 2 | jail this night, correct? |
| 10:43AM | 3 | A.  Yes. |
| 10:43AM | 4 | Q.  And you committed this crime on probation knowing that |
| 10:44AM | 5 | you on probation, cooperation agreement, and you still |
| 10:44AM | 6 | committed this crime, correct? |
| 10:44AM | 7 | A.  Yes. |
| 10:44AM | 8 | Q.  Domestic violence, correct? |
| 10:44AM | 9 | A.  Yes. |
| 10:44AM | 10 | Q.  Then, on March 16th, 2016, you still on probation, |
| 10:44AM | 11 | correct? |
| 10:44AM | 12 | A.  Yes. |
| 10:44AM | 13 | Q.  And you still on supervised release, still up on a |
| 10:44AM | 14 | cooperation agreement with the government, correct? |
| 10:44AM | 15 | A.  No. |
| 10:44AM | 16 | Q.  Not at this time? |
| 10:44AM | 17 | A.  After you get sentenced, you're not under a plea |
| 10:44AM | 18 | agreement anymore.  You're sentenced. |
| 10:44AM | 19 | Q.  Okay.  But you was still -- |
| 10:44AM | 20 | A.  Under supervised release, you got to follow by the terms |
| 10:44AM | 21 | and conditions of supervised release.  It's not a plea |
| 10:44AM | 22 | agreement. |
| 10:44AM | 23 | Q.  Okay.  But was you still with the 5K1 cooperation? |
| 10:44AM | 24 | A.  Yes. |
| 10:44AM | 25 | Q.  With the government? |

LLOYD -- BY THE DEFENDANT -- 09/23/2022

15

| | | |
|---|---|---|
| 10:44AM | 1 | A.  Yes. |
| 10:45AM | 2 | Q.  That always stays with you, correct? |
| 10:45AM | 3 | A.  Yes. |
| 10:45AM | 4 | Q.  Okay.  So, on March 16th, you tested positive for cocaine |
| 10:45AM | 5 | and got in a serious car accident, correct? |
| 10:45AM | 6 | A.  I tested positive for cocaine on several occasions, not |
| 10:45AM | 7 | while I got into a serious car accident. |
| 10:45AM | 8 | Q.  So, you wasn't high on cocaine when you got into a |
| 10:45AM | 9 | serious car accident? |
| 10:45AM | 10 | A.  No, sir. |
| 10:45AM | 11 | Q.  No, sir.  And on June 15, 2016, United States Probation |
| 10:45AM | 12 | conducted a search of your residence as well at 183 Royal |
| 10:45AM | 13 | Street and they discovered small personal use of marijuana |
| 10:45AM | 14 | and drug paraphernalia, packaging material, and scales, |
| 10:46AM | 15 | correct? |
| 10:46AM | 16 | A.  Yes, that's correct. |
| 10:46AM | 17 | Q.  And you doing this all while you up under the 5K1 |
| 10:46AM | 18 | cooperation with the government, correct? |
| 10:46AM | 19 | A.  That was a rental property.  I wasn't even living there. |
| 10:46AM | 20 | They searched the apartment, the house, because it's under my |
| 10:46AM | 21 | name and I own it. |
| 10:46AM | 22 | Q.  Probation? |
| 10:46AM | 23 | A.  Probation did, but that house was rented out to somebody. |
| 10:46AM | 24 | Q.  Okay.  Was you charged for it? |
| 10:46AM | 25 | A.  No, I was not. |

| | | |
|---|---|---|
| 10:46AM | 1 | Q.  Okay.  When you got caught with the drugs in Texas, did |
| 10:46AM | 2 | you get permission from your parole officer to leave out of |
| 10:46AM | 3 | the state? |
| 10:46AM | 4 | A.  No. |
| 10:46AM | 5 | Q.  You just did it on your own, just -- |
| 10:46AM | 6 | A.  Yes. |
| 10:46AM | 7 | Q.  Okay.  Is it fair to say that you just commit crimes, do |
| 10:47AM | 8 | what you want to do, cooperate with the government, because |
| 10:47AM | 9 | you know you're going to get a slap on the wrist? |
| 10:47AM | 10 | A.  No.  That's not fair to say. |
| 10:47AM | 11 | Q.  Is it fair to say that every time you get in trouble that |
| 10:47AM | 12 | you know you can get out of any of your troubles because you |
| 10:47AM | 13 | up under a cooperation agreement with the government, and |
| 10:47AM | 14 | they know you willing to say and do anything they tell you to |
| 10:47AM | 15 | do, correct?  And you can just continue committed crimes, |
| 10:47AM | 16 | right? |
| 10:47AM | 17 | A.  No. |
| 10:47AM | 18 | Q.  So, when you blew trial and you got a guilty verdict, you |
| 10:47AM | 19 | was facing -- the minimum was 10 years to life correct? |
| 10:47AM | 20 | A.  Yes. |
| 10:47AM | 21 | Q.  So, right now, you're facing life maximum? |
| 10:47AM | 22 | A.  No. |
| 10:47AM | 23 | Q.  If I show you -- you haven't been sentenced yet correct? |
| 10:48AM | 24 | A.  No. |
| 10:48AM | 25 | Q.  And what is your maximum sentence? |

| | | |
|---|---|---|
| 10:48AM | 1 | A.  Ten years. |
| 10:48AM | 2 | Q.  Ten years your maximum? |
| 10:48AM | 3 | A.  Yes. |
| 10:48AM | 4 | Q.  Can I show the defendant -- I can show the witness |
| 10:50AM | 5 | Exhibit Number 3614A?  Does that refresh your recollection? |
| 10:51AM | 6 | A.  Yes, it do. |
| 10:51AM | 7 | Q.  And this is your sentencing cooperation agreement, |
| 10:51AM | 8 | correct? |
| 10:51AM | 9 | A.  Yes. |
| 10:51AM | 10 | Q.  And it's dated for August 31st, 2022, correct? |
| 10:51AM | 11 | A.  Yes, sir. |
| 10:51AM | 12 | Q.  Can you -- line 1, can you read to the jury what it |
| 10:51AM | 13 | states? |
| 10:51AM | 14 | A.  Defendant Henry Lloyd and the United States Attorney of |
| 10:51AM | 15 | the Western District of New York -- |
| 10:51AM | 16 | Q.  No.  I'm talking about line 1, the possible -- paragraph |
| 10:52AM | 17 | 1.  The possible sentence. |
| 10:52AM | 18 | A.  Okay.  "On September 2nd, 2020, defendant was convicted |
| 10:52AM | 19 | by a jury verdict Count 1 of the indictment which charges the |
| 10:52AM | 20 | violation of Title 21 United States Code, Section 846, |
| 10:52AM | 21 | conspiracy to possess with intent to distribute and to |
| 10:52AM | 22 | distribute 500 grams or more of cocaine for which the |
| 10:52AM | 23 | possible sentence is a term of the minimum of the years and |
| 10:52AM | 24 | maximum of life" -- |
| 10:52AM | 25 | Q.  Slow down.  Slow down, please. |

LLOYD -- BY THE DEFENDANT -- 09/23/2022
18

| | | |
|---|---|---|
| 10:52AM | 1 | A.  Yes. |
| 10:52AM | 2 | Q.  Could you start back where it say, "for which the |
| 10:52AM | 3 | possible sentence is a term of" -- can you start from there |
| 10:52AM | 4 | and read it slow so the jurors can hear you. |
| 10:52AM | 5 | A.  The minimum of 10 years and a maximum of life up to a |
| 10:52AM | 6 | fine of $8 million. |
| 10:52AM | 7 | Q.  Okay.  So, you is facing life, correct? |
| 10:52AM | 8 | A.  Not after signing this plea agreement. |
| 10:52AM | 9 | Q.  Not after signing this? |
| 10:52AM | 10 | A.  The sentencing agreement.  If you go to page 3, paragraph |
| 10:52AM | 11 | 1, it is the understanding of the government and the |
| 10:53AM | 12 | defendant that with a total offense level 24 and a criminal |
| 10:53AM | 13 | history category IV, the defendant's sentencing range would |
| 10:53AM | 14 | be a term of imprisonment of 120 months, a fine of 20,000 to |
| 10:53AM | 15 | $8 million, and a period of supervised release for eight |
| 10:53AM | 16 | years.  So, part of this agreement, I'm not facing the |
| 10:53AM | 17 | maximum of life anymore.  It's only 10 years. |
| 10:53AM | 18 | Q.  Right.  It's up to the Judge, though, correct? |
| 10:53AM | 19 | A.  Yes.  The Judge has the last say so.  Yes. |
| 10:53AM | 20 | Q.  And this is why you testifying here today, because you're |
| 10:53AM | 21 | trying to get released on bail also?  Not just the 10 years, |
| 10:53AM | 22 | you want to get released on bail, and get lesser than 10 |
| 10:53AM | 23 | years, correct, for your testimony here today, correct? |
| 10:53AM | 24 | A.  Not just for my testimony here, for other cooperation as |
| 10:53AM | 25 | well. |

| | | |
|---|---|---|
| 10:53AM | 1 | Q.  I didn't hear you. |
| 10:53AM | 2 | A.  Not just for my testimony here, but for other cooperation |
| 10:53AM | 3 | as well, not just for the cooperation with you. |
| 10:54AM | 4 | Q.  So, you cooperated prior to this? |
| 10:54AM | 5 | A.  Yes. |
| 10:54AM | 6 | Q.  Okay.  Was you promised anything? |
| 10:54AM | 7 | A.  No, sir. |
| 10:54AM | 8 | Q.  Okay.  On redirect, the witness to Exhibit 3614L, that |
| 10:55AM | 9 | letter refresh your recollection? |
| 10:55AM | 10 | MR. LENIHAN:  There was no question. |
| 10:55AM | 11 | THE DEFENDANT:  Okay. |
| 10:55AM | 12 | THE COURT:  Sustained. |
| 10:55AM | 13 | BY THE DEFENDANT: |
| 10:55AM | 14 | Q.  Do you remember writing the Judge and telling the Judge |
| 10:55AM | 15 | about how you feeling that the government is treating you |
| 10:55AM | 16 | spiteful or they being spiteful or committing misconduct |
| 10:55AM | 17 | toward you?  You remember that letter to the Judge? |
| 10:55AM | 18 | A.  Yes. |
| 10:55AM | 19 | Q.  Okay.  And you was mad because they was supposed to give |
| 10:56AM | 20 | you -- so you can get your 5K1 points to get your time |
| 10:56AM | 21 | reduced, correct? |
| 10:56AM | 22 | A.  I was mad because they was using my Grand Jury |
| 10:56AM | 23 | transcripts and letting the agent testify on the behalf, when |
| 10:56AM | 24 | I testified at a Grand Jury.  And I felt like they should |
| 10:56AM | 25 | allowed me to testify instead of using the agent. |

| | | |
|---|---|---|
| 10:56AM | 1 | Q.  And you felt that they was doing this, being spiteful |
| 10:56AM | 2 | because they was mad at you because you went to trial with |
| 10:56AM | 3 | Roman Dunnigan, right? |
| 10:56AM | 4 | A.  Yes. |
| 10:56AM | 5 | Q.  And you felt that they wasn't going to give you your 5K1 |
| 10:56AM | 6 | points so you can get a slap on the wrist for losing trial, |
| 10:56AM | 7 | correct? |
| 10:56AM | 8 | A.  No.  They put my life in jeopardy I felt like. |
| 10:56AM | 9 | Q.  How they put your life in jeopardy? |
| 10:56AM | 10 | A.  Because of Tyrone Pennick and what he's capable of doing |
| 10:57AM | 11 | and what he done in the past.  So, I felt like if they was |
| 10:57AM | 12 | putting my life on the line without using me, I should have |
| 10:57AM | 13 | got some credit for it. |
| 10:57AM | 14 | Q.  Okay.  And how many times did they do this to you? |
| 10:57AM | 15 | A.  That was the first time at my trial. |
| 10:57AM | 16 | Q.  So, is it true that you did over 100 proffers for them |
| 10:57AM | 17 | and you felt like they use you and abuse you? |
| 10:57AM | 18 | A.  I can't count how many proffers I have done with the |
| 10:57AM | 19 | government, but it's probably over 100. |
| 10:57AM | 20 | Q.  And you proffered over 100 times for the government from |
| 10:57AM | 21 | 2009 to 2020, correct? |
| 10:57AM | 22 | A.  Yes, 2022 now. |
| 10:57AM | 23 | Q.  So, is it fair to say you've been committed crimes, |
| 10:57AM | 24 | getting in trouble, cooperating with the government for 11 |
| 10:57AM | 25 | years now and you feel like they just use and abuse you when |

10:58AM   1   you want?

10:58AM   2   A.   No.   I don't feel that way anymore after talking to the

10:58AM   3   government and my lawyer.

10:58AM   4   Q.   For your testimony here today, correct; because you could

10:58AM   5   possible get bail, you could possibly get time served without

10:58AM   6   having to go to prison, correct?

10:58AM   7   A.   Nothing is promised, and my lawyer is going to do

10:58AM   8   whatever he need to do for my best interest.

10:58AM   9   Q.   So, when you commit crimes and you go to trial and you

10:58AM   10   facing jurors, and you know you commit these crimes, and you

10:58AM   11   know you on probation or you up under an agreement with the

10:58AM   12   government, and you still commit these crimes, and it's like

10:58AM   13   a pattern for 11 years now since your over first case, that

10:58AM   14   you cooperate with the government and feel like you can just

10:58AM   15   get out of any trouble, and commit any crimes when you want,

10:58AM   16   to come in and testify against people, correct?

10:59AM   17   A.   No.

10:59AM   18   Q.   You know you can always depend on the government,

10:59AM   19   correct?

10:59AM   20   A.   No.   The government doesn't work like that.

10:59AM   21   Q.   Doesn't work like that?

10:59AM   22   A.   No.

10:59AM   23   Q.   Is it true you wrote Mr. Lenihan and said, let's continue

10:59AM   24   to help each other?   I just want what's right and fair.   And

10:59AM   25   the case they wanted to use you for, they just had you

10:59AM  1   sitting around, denying all your bails, and you was getting

10:59AM  2   fed up, correct?

10:59AM  3   A.  Yes, but did you just listen to yourself read it?  Let's

11:00AM  4   continue to help each other.  What's fair and what's right.

11:00AM  5   Q.  Right?

11:00AM  6   A.  That means that I was never promised or guaranteed

11:00AM  7   anything.

11:00AM  8   Q.  But this is y'all relationship.  You can always count on

11:00AM  9   the government to set you free for your cooperation, correct?

11:00AM  10  A.  No, sir.

11:00AM  11  Q.  You remember saying that in a letter?

11:00AM  12  A.  I never said I could count on the government to set me

11:00AM  13  free in a letter.  No, sir.  I never said that.

11:00AM  14  Q.  So, what do you mean -- explain that the jury when you

11:00AM  15  said, let's continue to help each other, but I want what's

11:00AM  16  right and fair.  The case they want you to -- they want to

11:00AM  17  use you for, there's not a trial date in sight yet.  That was

11:00AM  18  about my case, correct?

11:00AM  19  A.  I'm not sure, because there's another trial that doesn't

11:00AM  20  have a trial date set, so I'm not sure if it was your trial

11:00AM  21  or a trial I'm supposed to be testifying in.

11:00AM  22  Q.  So, is it fair to say that they use you for any trial

11:01AM  23  they want you to use you for because they know you going to

11:01AM  24  come in there and say what they want you to say, correct?

11:01AM  25  A.  No.  That's not correct.

| | | |
|---|---|---|
| 11:01AM | 1 | Q.  So, the next trial you're about to testify to, who is |
| 11:01AM | 2 | this person? |
| 11:01AM | 3 | MR. LENIHAN:  Objection. |
| 11:01AM | 4 | THE COURT:  Sustained. |
| 11:01AM | 5 | BY THE DEFENDANT: |
| 11:01AM | 6 | Q.  Do you know the person? |
| 11:01AM | 7 | A.  Yes. |
| 11:01AM | 8 | Q.  He's in Cattaraugus County, too? |
| 11:01AM | 9 | MR. LENIHAN:  Objection. |
| 11:01AM | 10 | THE WITNESS:  No. |
| 11:01AM | 11 | THE COURT:  Sustained.  Well, all right. |
| 11:01AM | 12 | BY THE DEFENDANT: |
| 11:01AM | 13 | Q.  You was asked on direct and you testified that I gave |
| 11:02AM | 14 | Letorrance Travis $73,000 before he went -- before he got |
| 11:02AM | 15 | arrested in 2011.  You testified under oath, correct? |
| 11:02AM | 16 | A.  Yes. |
| 11:02AM | 17 | Q.  And that's true, correct? |
| 11:02AM | 18 | A.  Yes. |
| 11:02AM | 19 | Q.  But your prior testimony, you to testified under oath in |
| 11:02AM | 20 | the interview with Mr. Lenihan and agents and you also |
| 11:02AM | 21 | testified under oath -- do you remember the May 5th -- I |
| 11:03AM | 22 | mean, May 26, 2022 interview with Mr. Lenihan and agents? |
| 11:03AM | 23 | A.  Yes. |
| 11:03AM | 24 | Q.  And you testified under oath.  You was being truthful, |
| 11:03AM | 25 | correct? |

| | | |
|---|---|---|
| 11:03AM | 1 | A.  I was being truthful but I wasn't under oath. |
| 11:03AM | 2 | Q.  Okay.  But it's a sworn statement, correct? |
| 11:03AM | 3 | A.  Yes.  Once it's committed -- that evidence to the Court, |
| 11:03AM | 4 | yes. |
| 11:03AM | 5 | Q.  Everything you say to them in any type of interviews, you |
| 11:03AM | 6 | got to testify honestly? |
| 11:03AM | 7 | A.  Yes. |
| 11:03AM | 8 | Q.  No false testimony, correct? |
| 11:03AM | 9 | A.  No false testimony. |
| 11:03AM | 10 | Q.  So, at this hearing, you stated that Arrington owed |
| 11:03AM | 11 | Travis $73,000 and gave it to Travis the day before Arrington |
| 11:04AM | 12 | got locked up.  Lloyd stated that the money belonged to the |
| 11:04AM | 13 | Mexicans.  Remember that? |
| 11:04AM | 14 | A.  The day before Arrington got locked up?  No.  I never |
| 11:04AM | 15 | said the day before Arrington got locked up. |
| 11:04AM | 16 | Q.  If I show you a copy of this exhibit, would it refresh |
| 11:04AM | 17 | your recollection? |
| 11:04AM | 18 | A.  Yes.  I would love to see that. |
| 11:04AM | 19 |         THE DEFENDANT:  I want to direct the Court to 3614E, |
| 11:04AM | 20 | page 202 on the back top line.  Do you remember that |
| 11:05AM | 21 | testimony? |
| 11:05AM | 22 |         MR. LENIHAN:  Objection.  Mischaracterization. |
| 11:05AM | 23 | It's -- |
| 11:05AM | 24 |         THE COURT:  Sustained.  Rephrase the question, |
| 11:05AM | 25 | please. |

| | | |
|---|---|---|
| 11:05AM | 1 | BY THE DEFENDANT: |
| 11:05AM | 2 | Q.  You testified on direct that I gave Travis $73,000 before |
| 11:05AM | 3 | he got arrested in 2011.  You testified today and said that I |
| 11:05AM | 4 | give him $73,000 before he got arrested in 2011, correct? |
| 11:06AM | 5 | That was your testimony today? |
| 11:06AM | 6 | A.  Before he got arrested. |
| 11:06AM | 7 | Q.  Right.  Before he got arrested in 2011, right? |
| 11:06AM | 8 | A.  Yes. |
| 11:06AM | 9 | Q.  But your testimony, sworn testimony, you stated that I |
| 11:06AM | 10 | gave Letorrance Travis $73,000 before I got arrested in 2014. |
| 11:06AM | 11 | MR. LENIHAN:  Objection.  Mischaracterization. |
| 11:06AM | 12 | THE DEFENDANT:  Will you read it to the jurors? |
| 11:06AM | 13 | THE COURT:  You're talking about the testimony? |
| 11:06AM | 14 | THE DEFENDANT:  Yes, Your Honor.  The testimony -- |
| 11:06AM | 15 | THE REPORTER:  Hold on.  On at a time. |
| 11:06AM | 16 | THE DEFENDANT:  Either he's lying here -- |
| 11:06AM | 17 | MR. LENIHAN:  Judge -- |
| 11:06AM | 18 | THE DEFENDANT:  Either he's lying here or he lied to |
| 11:06AM | 19 | the government, Your Honor, and I'm just trying to show the |
| 11:06AM | 20 | jurors that he lied under oath, and when he -- |
| 11:06AM | 21 | THE COURT:  That will be up to the jury to decide |
| 11:06AM | 22 | that issue.  The problem is, you're saying the word testimony. |
| 11:06AM | 23 | It's a statement, I guess, sworn to. |
| 11:06AM | 24 | MR. LENIHAN:  It's a proffer interview report written |
| 11:06AM | 25 | by an agent. |

| | | |
|---|---|---|
| 11:06AM | 1 | THE COURT:  It's not testimony. |
| 11:06AM | 2 | MR. LENIHAN:  And it wasn't -- |
| 11:06AM | 3 | THE COURT:  Rephrase your question. |
| 11:07AM | 4 | BY THE DEFENDANT: |
| 11:07AM | 5 | Q.  You stated under oath today? |
| 11:07AM | 6 | A.  Yes. |
| 11:07AM | 7 | Q.  That I gave Travis $73,000 before he got arrested in |
| 11:07AM | 8 | 2011? |
| 11:07AM | 9 | A.  Yes. |
| 11:07AM | 10 | Q.  You said this today under oath? |
| 11:07AM | 11 | A.  Yes. |
| 11:07AM | 12 | Q.  In May 26th 2022, you stated something different.  Which |
| 11:07AM | 13 | one is true? |
| 11:07AM | 14 | A.  I never stated nothing different. |
| 11:07AM | 15 | Q.  Can you read the first line? |
| 11:07AM | 16 | A.  I read the first line. |
| 11:07AM | 17 | Q.  Can you read it out loud? |
| 11:07AM | 18 | A.  Mr. Lloyd stated that Arrington owed -- |
| 11:07AM | 19 | MR. LENIHAN:  Judge, objection.  This is not his |
| 11:07AM | 20 | statement.  This is an agent report.  It's a 302. |
| 11:07AM | 21 | THE COURT:  It's a 302? |
| 11:07AM | 22 | MR. LENIHAN:  Yes. |
| 11:07AM | 23 | THE COURT:  It's not a statement. |
| 11:07AM | 24 | THE DEFENDANT:  So -- |
| 11:07AM | 25 | THE COURT:  Show him the document.  See if it |

| | | |
|---|---|---|
| 11:07AM | 1 | refreshes his memory.  He'll answer it yes or no and if it |
| 11:08AM | 2 | does refresh his memory, how does it refresh his memory. |
| 11:08AM | 3 | That's the way you ask the question. |
| 11:08AM | 4 | BY THE DEFENDANT: |
| 11:08AM | 5 | Q.  You remember giving that testimony? |
| 11:08AM | 6 | A.  I remember saying that you owed Letorrance Travis 73,000 |
| 11:08AM | 7 | because you told me that.  And I never said you -- the day |
| 11:08AM | 8 | before you got locked up.  This is a misprint.  I did not |
| 11:08AM | 9 | write this.  The agents must have mixed something up when |
| 11:08AM | 10 | they was missing what I was saying, but this is not anything |
| 11:08AM | 11 | that I wrote or anything that -- some of it is true, is what |
| 11:08AM | 12 | I said, but clearly you wasn't locked up.  Letorrance got |
| 11:08AM | 13 | locked up. |
| 11:08AM | 14 | Q.  So, you said that in this interview, this is not your |
| 11:08AM | 15 | testimony or your statement? |
| 11:08AM | 16 | A.  That's not what I said. |
| 11:08AM | 17 | Q.  That's not what you said? |
| 11:08AM | 18 | A.  It must have been a mistype or they must have been -- I |
| 11:08AM | 19 | talk about so much stuff in the interviews and agents just |
| 11:08AM | 20 | sit there writing anything down on a pad of paper.  They must |
| 11:09AM | 21 | have mistyped this when they typed this up. |
| 11:09AM | 22 | Q.  So, most everything on here can be mistype, correct? |
| 11:09AM | 23 | A.  Yes.  That's very much correct. |
| 11:09AM | 24 | Q.  Okay.  But is it fair to say that it's two different |
| 11:09AM | 25 | statements being given, correct? |

| | | |
|---|---|---|
| 11:09AM | 1 | MR. LENIHAN: Objection. |
| 11:09AM | 2 | THE WITNESS: No. |
| 11:09AM | 3 | THE COURT: Sustained. That's not his statement. |
| 11:09AM | 4 | It's a document that was prepared by the FBI. And was sworn |
| 11:09AM | 5 | to in an interview. Have you ever seen that before? |
| 11:09AM | 6 | THE WITNESS: It happened to me in previous trials. |
| 11:09AM | 7 | Yes. |
| 11:09AM | 8 | THE COURT: Did you ever adopt it? |
| 11:09AM | 9 | THE WITNESS: No. |
| 11:09AM | 10 | THE COURT: All right. Anything further? |
| 11:10AM | 11 | THE DEFENDANT: No further questions for this |
| 11:10AM | 12 | witness. |
| 11:10AM | 13 | MR. LENIHAN: Brief redirect, Your Honor. |
| 11:10AM | 14 | THE COURT: All right. |
| 11:10AM | 15 | |
| 11:10AM | 16 | REDIRECT EXAMINATION |
| 11:10AM | 17 | |
| 11:10AM | 18 | BY MR. LENIHAN: |
| 11:10AM | 19 | Q. Now, Mr. Lloyd, Mr. Arrington was asking you about |
| 11:10AM | 20 | looking up case law, going on the computer? |
| 11:10AM | 21 | A. Yes. |
| 11:10AM | 22 | Q. Are the details of a case contained within case law? |
| 11:10AM | 23 | A. No details, just basically what you was charged with and |
| 11:10AM | 24 | what people testified to, but it doesn't go into detail. |
| 11:10AM | 25 | Q. For example, would it have all the people that were at an |

LLOYD -- BY MR. LENIHAN -- 09/23/2022

29

| | | |
|---|---|---|
| 11:10AM | 1 | alleged murder crime? |
| 11:10AM | 2 | A.  No. |
| 11:10AM | 3 | Q.  And is there any case law out there about the murder of |
| 11:10AM | 4 | Josh? |
| 11:10AM | 5 | A.  No. |
| 11:10AM | 6 | Q.  Is there any case law out there about Letorrance, about |
| 11:11AM | 7 | the defendant owing Letorrance Travis $73,000? |
| 11:11AM | 8 | A.  No. |
| 11:11AM | 9 | Q.  So, how did you learn this? |
| 11:11AM | 10 | A.  Mr. Arrington told me. |
| 11:11AM | 11 | Q.  And you know Mr. Arrington? |
| 11:11AM | 12 | A.  Yes. |
| 11:11AM | 13 | Q.  Just to clear up the plea agreement that you had, that |
| 11:11AM | 14 | was in 2012? |
| 11:11AM | 15 | A.  What, the first one? |
| 11:11AM | 16 | Q.  The Defense Exhibit Number 1? |
| 11:11AM | 17 | A.  Yes. |
| 11:11AM | 18 | Q.  And then, pursuant to that plea agreement, did you enter |
| 11:11AM | 19 | into a cooperation agreement? |
| 11:11AM | 20 | A.  Yes. |
| 11:11AM | 21 | Q.  Did you testify pursuant to that cooperation agreement? |
| 11:11AM | 22 | A.  Yes. |
| 11:11AM | 23 | Q.  And then you committed a crime after you were sentenced |
| 11:11AM | 24 | you said? |
| 11:11AM | 25 | A.  Yes. |

11:11AM   1   Q.  Did you believe that you were still under that

11:11AM   2   cooperation agreement?

11:11AM   3   A.  No.

11:11AM   4   Q.  And you expressed that -- did you have frustrations with

11:11AM   5   the government as to your prosecution in 2020?

11:11AM   6   A.  Yes.

11:11AM   7   Q.  And what was your understanding as to why your prior

11:11AM   8   cooperation couldn't be used to help you out in 2020?

11:12AM   9   A.  What my idea?

11:12AM  10   Q.  What's your understanding?

11:12AM  11   A.  My understanding is because -- I guess because I wouldn't

11:12AM  12   take a plea and cooperate.

11:12AM  13   Q.  And then also you committed another crime?

11:12AM  14   A.  Yes.

11:12AM  15   Q.  Is it -- so Mr. Arrington said that you can do whatever

11:12AM  16   you want and get out of trouble; is that fair to say?

11:12AM  17   A.  No.

11:12AM  18   Q.  How much time have you served right now?

11:12AM  19   A.  Fifty-two months.

11:12AM  20   Q.  And you're looking at -- can you explain to the jury the

11:12AM  21   difference between mandatory minimum and guidelines?

11:12AM  22   A.  A mandatory minimum is, when you got a mandatory minimum,

11:12AM  23   the Judge cannot go under the mandatory minimum.  And the

11:12AM  24   federal guidelines is, they go by your category and your

11:12AM  25   criminal history.  And whatever the level that the offenses

11:12AM 1  were, and they sentence you.  The Judge got to sentence you

11:12AM 2  within those guideline.  But if you have a mandatory minimum,

11:12AM 3  he cannot go under those mandatory minimum.  He have to

11:13AM 4  sentence you at minimum to the mandatory minimum.

11:13AM 5  Q.  By testifying here today, are you hoping to get

11:13AM 6  underneath the mandatory minimum?

11:13AM 7  A.  Yes.  The only way you get under a mandatory minimum is

11:13AM 8  with cooperation.  And I'm hoping that the Judge will give me

11:13AM 9  a sentencing reduction for my cooperation.

11:13AM 10  Q.  Do you believe you were treated fairly by the government?

11:13AM 11  A.  Do I believe I'm treated fairly by the government?  Now,

11:13AM 12  yes.

11:13AM 13          MR. LENIHAN:  No further questions, Your Honor.

14  (The witness was excused at 11:13 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
1              *     *     *     *     *     *     *

2

3              I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                               s/ Megan E. Pelka, RPR

10                              Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```