IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.

Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No._____

UNITED STATES OF AMERICA,

Respondent

_____/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

## Motion for Leave to File Amended Motion by Aaron Hick

NOW COMES the Petitioner, Aaron Hicks, (hereinafter "Hicks" or "Petitioner"), proceeding in this matter, pro-se and submits the instant Memorandum of law in support of his Motion for Leave to File Amended Motion.

In support hereof, Petitioner Hicks states the following:

### PRELIMINARY STATEMENT

As a preliminary matter, Hicks respectfully requests that this Court be mindful that pro se pleadings are to be construed liberally. See Rogers v. Boatright, 709 F.3d 403 (5th Cir. 2013); Estelle v. Gamble, 429 U.S. 97,106 (1976) (same); and Haines v. Kerner, 404 U.S. 519, 520 (1972) (same).

## RELEVANT BACKGROUND and FACTS

Hicks writes for parties, who are familiar with the facts, procedural history, and scope of the claim(s) presented. Thus, he will recount only those facts necessary for this Amendment:

Pending before this honorable court is; Issues Presented for Section 2255 Review:

I.  Whether Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to investigate issues relating to jurors' bias?

II.  Whether Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to request for dismissal of RICO count due to decriminalization of marijuana in his State prior felony convictions?

III.  Whether Hicks was due process of law and effective assistant of counsel when he was given a $10.6 million-dollar forfeiture for a cocaine conspiracy that he was acquitted of?

IV.  Whether Hicks was due process of law where LoTempio's representation of Arrington created a conflict of interest with Hicks that Hicks was unwilling to waive.

On or about February 21st, 2023, Hicks filed a motion to vacate under U.S.C. section 2255. See Doc. # 964; and a motion seeking leave to file amended motion. Id. At 965. Hicks' Motion to Amend asserts in his Motion to Amend, inter alia, that due to the lockdowns and restrictions in place during the COVID-19 pandemic it is difficult for inmates to obtain relevant and necessary documents, visit the law library, obtain copy and postal services, and the like, all of which make it difficult to timely file motions and petitions. He further asserts that he filed the Motion to Vacate at this time to preserve its timeliness and serve as a placeholder motion.

Based on the assertions set forth in the Motion to Amend, the Court granted Hicks an extension of time to file an amended motion under 28 U.S.C. § 2255 up to and including April 25, 2023. As a result, lately received documents/ affidavit Mr.

Hicks will be timely placing these documents in the U.S. mailed on April 24th, 2023. Next day mail service.

**RULE 15:**

Under Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), the Court may only consider Petitioner's ineffective assistance of counsel argument if it "relates back" to the original § 2255 Motion. Rule 15 provides that amendments to a pleading may not be made after the statute of limitations has run unless the amendment relates back to the date of the original pleading. Fed. R. Civ. P. 15(a). In applying this rule, amendments are deemed to "relate back" to the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed R. Civ. P. 15(c)(2).

The Supreme Court recently examined Rule 15(c)(2) in the habeas context in Mayle v. Felix, 125 S. Ct. 2562 (2005). There, the Supreme Court rejected the claim that a petitioner's "trial, conviction, or sentence" constitute the "conduct, transaction, or occurrence" contemplated by Rule 15; otherwise, all amendments would relate back because any § 2255 claim by its very nature is an attack on the underlying criminal proceedings. Id. at 2573-4. Instead, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Id. at 2574. Mayle further explains that relation back is allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory." Id. at 2568.

The Court should find that Hicks ineffective assistance of counsel claim does in fact relate back to the original § 2255 Motion. In sum and substance, this new claim is based on the same set of circumstances that he initially challenged in his § 2255 Motion, namely, "Whether Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to investigate issues relating to jurors' bias?" Therefore, Hicks ineffective assistance of counsel claim and the original substantive challenge to his base offense level arise from a "common core of operative facts," Therefore, the Court may consider the ineffective assistance claim.

The enclosed document and amendment relate to Hicks claim he was denied due process of law and effective assistant of counsel when trial counsel refused to investigate issues relating to jurors' bias.

3

Hicks was denied the right to a trial by a fair and impartial jury;" Ruggiero v. U.S., 97 Civ. 2925 (HB), at *1 (S.D.N.Y. Mar. 22, 2001). Hicks alleges that there were a number of irregularities that prevented the jury from being fair and impartial. These claims are based on the post-trial statements of two (2) jurors.

Whom Hicks contacted after the trial, by way of private investigator. These two jurors failed to disclose on voir dire that while deliberating there were other jurors using racial slurs. These jurors came forward both during and after trial, but counsel refused to investigate the matter.

These jurors who witnessed these accounts have given affidavits and will testify if necessary.

The Supreme Court has established a two-part test for determining whether a new trial is warranted when a defendant alleges juror bias based on juror misrepresentation during voir dire. "A party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." McDonough Power Equip. v. Greenwood, 464 U.S. 548, 556 (1984). The goal of this inquiry is to determine whether the juror was in fact biased against the defendants.

Each juror must be able to make that decision based solely on the evidence, uninfluenced by personal experiences that he or she may have had." United States v. Sampson, 820 F. Supp. 2d 151, 157 (D. Mass. 2011) ("Sampson I"). "'When possible, juror misconduct is brought to the trial judge's attention, he has a duty to investigate and to determine whether there may have been a violation of the [S]ixth [A]mendment.'" United States v. Lloyd, 462 F.3d 510, 518 (6th Cir. 2006) (quoting United States v. Shackleford, 777 F.2d 1141, 1145 (6th Cir. 1985))." Morgan v. Illinois, 504 U.S. 719, 729 (1992).

Hicks moves for a judgment vacating his conviction or, in the alternative, have an evidentiary hearing in regard to the juror bias claim.

Hicks was denied due process of law and a fair trial where the Judge in this case was bias and almost always sided with the prosecutors. Furthermore, Courts should be reluctant to "haul jurors in" after they have rendered a verdict and probe for potential instances of bias, misconduct or extraneous influences. These

unnecessary post-verdict inquiries may lead to "evil consequences: subjecting juries to harassment, inhibiting jury room deliberation, burdening courts with meritless applications, increasing temptations for jury tampering and creating uncertainty in jury verdicts." United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989).

In determining whether implied jury bias existed, the Court is mindful that it should not "create a set of unreasonably constricting presumptions that jurors [are impliedly biased because of] certain occupational or special relationships which might bear directly or indirectly on the circumstances of a given case. . .." Mikus v. United States, 433 F.2d 719, 724 (2d Cir. 1970).

Finally, judicial intervention is prejudicial only to the extent "that the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." United States v. Messina, 131 F.3d 36, 39 (2d Cir. 1997) (quoting United States v. Gucrlielmini, 384 F.2d 602, 605 (2d Cir. 1967)). In the instant case, the trial judge improperly outside of the presents of the others jurors, the prosecutor and the lawyers interfered with the only African American jurors' vote.

**Charlene G. Barbary** was a member of the Federal Jury on a criminal trial involving Mr. Hicks. She was the only African American juror and everyone else was Caucasian with the exception of a female Puerto Rican juror.

Ms. Barbary believed the Government had not prove their case against Mr. Hicks; and that the other jurors seemed to be stereotyping Mr. Hicks based on his skin color.

Not all, but a number of jurors didn't appear to be happy with Ms. Barbary's not guilty vote and kept asking her if she needed to see anything again to help in her decision. One white female juror, believe to be the foreperson was noticeably more upset than the others regarding Ms. Barbary's decision and went out to speak with the judge.

Ms. Barbary became very upset and walked out of the jury room on one occasion crying. As a result, the Judge had her brought into his chambers alone. Ms. Barbary felt uncomfortable, has the judge began telling her that he had explained to Mr. Hicks that if he didn't take a plea and went to trial, he was going to lose and then he would sentence him to the maximum sentence under the law, which she believe was 25-30 years to life.

In sum, the relevant discussion with the Judge made Ms. Barbary change her vote to guilty because of the immense pressure she felt from both other members of the jury as well as the judge after he brought me into his chambers alone. Today, Ms. Barbary truly regret changing her decision in this case. (See attachments).

**Patricia A. Kessel** was also a member of the Federal Jury on a criminal trial involving Mr. Hicks.

Ms. Kessel felt many members of the jury seemed to concerned with going home and not deliberating the matter. They also appeared to her to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from.

At the start of deliberations, Ms. Kessel felt intimated by a number of the members of the jury. She had voiced her concerns about this to the jury foreperson. Ms. Kessel believes the foreperson wrote a note to the Judge.

According, to Ms. Kessel there appeared to be a complete disregard for the jury instructions both at the time of deliberation but also during the trial, where she observed a number of jurors talking about the matter before the trial was over.

In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made II fair judgment impossible. " Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L.Ed.2d 474 (1994). Here the court did not review the entire record to see if "the trial judge conducted the trial in a fair and impartial manner". See Willia1ns v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389.

"(O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism "Litek'")', 510 U.S. at 555, 114 S. Ct. 1147. The actions of the judge in this case clearly rise to the level of impermissible judicial 'bias. Id. at 555-56, 114 S. Ct. 1147. Thus, the judge's actions deprived Hicks of a fair trial. See also, Rowsey v. Lee, 327 F3d 335, 341-42 (4th Cir. 2003); U.S. v. Rhynes, 206 F3d 349 (4th Cir. 1999) (The court held that it was "improper for the prosecutor to convey information or to discuss any matter relating to the merits of the case or sentence with the judge in the absence of counsel." Id. The court further stated that "not only is it a gross breach of the appearance of justice when, defendant's principal adversary is given private access to the ear of the court, it is a dangerous..."); Satcher v. Netherland, 944 F. Supp. 1222 (E.D. Va. 1996) Cited 18 times a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." Rose v. Clark, 478 U.S. 570,578, 106 S. Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). That is, jury partiality, like trial by a biased judge, constitutes a "structural defect in the constitution of the trial mechanism, which def[ies] analysis by• harmless-error' standards." Arizona v. Ful1ninante, 499 U.S. 279, 309, 111 S. Ct 1246, 1265,113 L.Ed.2d302 (1991); Mathis v. Young CIVIL ACTION NO. 5:17-cv-03851 (S.D.W. Va. Oct. 29, 2018) that transferring the matter to the Eleventh Circuit Court of Appeals would be futile. The Petitioner objects, arguing that§ 2255 was inadequate or ineffective to test the legality of his detention. He contends that he is innocent of the charges against him and that his trial, conviction, and sentence were tainted by constitutional violations and by the misconduct and bias of the trial judge. He argues that he was denied the opportunity to challenge a warrantless search.).

At the direction of the Court, and for the continued efficient administration of justice.

Accordingly, Hicks should be given the opportunity to be heard on this very important matter.

Motions for Appointment of Counsel and Evidentiary Hearing

Pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings, the court must determine whether to hold an evidentiary hearing only if the petition is not dismissed. Additionally, the appointment of counsel is within the discretion of the court, and the court must appoint counsel in habeas proceeding only "[i]f an evidentiary hearing is required." Rule 8(c) of the Rules Governing § 2255 Proceedings; see 18 U.S.C. § 3006A(2)(b). Because an evidentiary hearing is required to resolve Hicks § 2255 motion, it is necessary for this court to appoint counsel for Hicks. See, Pilson v. United States, Cr. No. 3:05-944 (D.S.C. Jan. 6, 2015). It is within the court's discretion to appoint counsel if it deems it to be "in the interest of justice." 18 U.S.C. § 3006A(2)(b). Rule 8(c) of the Rules Governing § 2255 Proceedings provides that a court must appoint counsel in habeas proceeding only "[i]f an evidentiary hearing is required." The interests of justice do require the appointment of counsel, and an evidentiary hearing is required to resolve Hicks § 2255 motion.

Respectfully Submitted,

_____

Aaron Hicks, pro-se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 24st, 2023 the foregoing Pro-se motion seeking to amend the pending section 2255 motion was served upon the U.S. Attorney for the Western District of New York via U.S. Mail and pre-paid.

Aaron Hicks, pro-se

# ATTACHMENT(S)

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON HICKS,<br>　　　　　　　　　　Petitioner, | DECLARATION OF ATTORNEY<br>ROBERT ROSS FOGG |
| v.<br><br>UNITED STATES OF AMERICA,<br>　　　　　　　　　　Respondent. | Case No. 1:15-CR-00033(RJA)(RBS)<br>Civil Action No. 1:23-cv-00166-RJA<br><br>Assigned to: Hon. Richard J. Arcara<br>Referred to: Hon. Hugh B. Scott |

<u>SUPPORTING AFFIDAVIT</u>

STATE OF NEW YORK　)
COUNTY OF ERIE　　　)　:ss.
CITY OF BUFFALO　　)

　　　　I, ROBERT ROSS FOGG, ESQ., pursuant to 28 U.S.C. §1746, hereby depose and declare as follows:

　　　　1.　　I am a United States citizen who is over the age of 18 and a resident of the State of New York. I am an attorney at law duly licensed to practice in the State of New York and admitted to practice before the United States District Court for the Western District of New York, with a solo-practice located at 69 Delaware Avenue, Suite 600, Buffalo, New York 14202; Phone number: (716) 853-3644; and Email: rfogg@rfogglaw.com.

　　　　2.　　On February 23, 2015, Mr. Aaron Hicks (hereinafter referred to as "Hicks") was arrested and eventually charged in a three-count superseding indictment with, under Count 1, racketeering conspiracy in violation of 18 U.S.C. § 1962(d), under Count 2, narcotics conspiracy (marijuana, cocaine and cocaine base) in violation of 21 U.S.C. § 846, and under Count 3, possession of firearms in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. §§ 924(c) and 2.

　　　　3.　　I, as retained counsel, represented Hicks during his first criminal jury trial on the above-entitled action brought by the United States of America, the verdict of which was rendered

1

on October 13, 2017. During jury deliberations, a loud verbal and physical altercation between jurors broke out, which required the intercession of Court Officers. The jury found Hicks guilty of engaging in a marijuana conspiracy but acquitted him of conspiring to traffic cocaine or cocaine base, and a firearm possession charge. The jury was unable to reach a verdict on the RICO conspiracy count and the District Court declared a mistrial.

4.  At the Court's pronouncement of mistrial, the government declared their intention and decision to retry Hicks on Count 1 of the superseding indictment charging a RICO conspiracy and requested a trial date, to which the Court granted and scheduled. Accordingly, Hicks advised the Court of his inability to pay counsel for a retrial. In addition, I advised the Court of my refusal to represent Hicks *pro bono*. I further advised the Court that I was not a CJA panel member and did not desire to be so. Notwithstanding, concerned with delays caused by new substitute counsel's need for time to become familiar with the case, the Court *sua sponte* designated me CJA Appointment against my wishes. I had not gone through a CJA interview process, nor had I completed and submitted a CJA application. I was never trained with regard to the CJA policies, procedures, support tools, reporting of time, billable hours or services, nor the availability and procurement of professional services, etc.

5.  Consequently, I, as CJA appointed counsel, represented Hicks during his criminal retrial on the above-entitled action brought by the United States of America, the verdict of which was rendered on May 2, 2018. At the retrial, the government presented substantially the same evidence that it had presented during the first trial. During jury deliberations, one of the jurors, who was crying distraughtly, requested to be removed as a juror due to racial animosity amongst jurors in the deliberation room. The jury found Hicks guilty of a RICO Conspiracy.

2

6. After trial, the exact date unknown, Hicks brought to my attention issues of potential juror misconduct. As a solo practitioner of a small criminal defense law office, I was unable to investigate the existence of evidence supporting his claim. In addition, I was not aware that professional investigative services were available through CJA and was unfamiliar with the process of obtaining any needed services. In fact, due to my lack of CJA familiarity and training, to date I have not been paid for my services.

7. Upon his conviction in the first trial of Conspiracy to Possess with Intent to Distribute, and to Distribute, Marijuana and his conviction in the retrial of a RICO Conspiracy, the District Court sentenced Hicks to 360 months of imprisonment.

8. Recently, I learned from Hicks' Investigator Paul H. Lawrence, LPI, of Empire Investigations at 733 Delaware Road # 102, Buffalo, N.Y. 14223, that, by way of supporting affidavit(s) and an audio interview from Juror Charlene Barbary, the above stated misconduct could be proven.

9. If Mr. Aaron Hicks is granted an evidentiary hearing in this matter, I am willing to provide testimony as to the facts stated within my affidavit.

10. I have read the following statements, stated within this affidavit, I fully understand these statements and they are true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.
Executed on this ___22nd___ day of April 2023.

*[signature]*
Robert Ross Fogg, Attorney at law

3

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.

Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No._____

UNITED STATES OF AMERICA,

Respondent

_____/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

# SUPPORTING AFFIDAVIT

DECLARATION OF CHARLENE A. BARBARY

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Charlene A. Barbary, do hereby solemnly swear and depose that my date of birth is October 9, 1966 and that I currently reside at 1435 Kenmore Avenue, Kenmore, New York 14217.

2). I was a member of the Federal Jury on a criminal trial involving Aaron Hicks. My entire experience on this jury is still very clear to me at this time.

3). I was the only African American juror and everyone else was Caucasian with the exception of a female Puerto Rican juror. They seemed to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from.

1

*Charlene G. Barbary* (signature)

4). A number of jurors didn't appear to be happy with my not guilty vote and kept asking me if I needed to see anything again to help in my decision. I said no and I felt I had everything I needed to make my decision. I did not feel that the government had proven their case beyond a reasonable doubt.

5). One white female juror, who I think may have been the foreperson, was noticeably more upset than the others regarding my decision and went out to speak with the judge. This made me very upset and I walked out of the jury room on one occasion crying.

6). The judge had me brought into his chambers alone and began to discuss things with me. I did not like going back there by myself. What I found peculiar and what made me uncomfortable was his telling me that he had explained to Mr. Hicks that if he didn't take a plea and went to trial he was going to lose and then he would sentence him to the max, which I believe was 25-30 years to life.

7.) I didn't understand and still don't know how this was relevant to me as a juror. Because he is a judge I wasn't sure what I should do considering he sits in a position of authority. And I also questioned why he wouldn't have brought this up to all of us jurors & not just me. I didn't feel that this was fair to Mr. Hicks.

8.) I changed my vote to guilty because of the immense pressure I felt from both other members of the jury as well as the judge after he brought me into his chambers alone. I truly regret changing my decision and it wasn't what I believed to be true.

9). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this _____ day of April 2023.

*Charlene G. Barbary*
Charlene A. Barbary

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.

Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No._____

UNITED STATES OF AMERICA,

Respondent

_____/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

## SUPPORTING AFFIDAVIT

DECLARATION OF PATRICIA A. KESSEL

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Patricia A. Kessel, do hereby solemnly swear and depose that my date of birth is July 30, 1975 and that I currently reside at 7701 Wohlhueter Rd, Colden, New York 14033.

2). I was a member of the Federal Jury on a criminal trial involving Aaron Hicks. My entire experience on this jury is still very clear to me at this time.

1

3). Many members of the jury seemed to concerned with going home and not deliberating the matter. They also appeared to me to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from.

4). At the start of deliberations, I felt intimated by a number of the members of the jury. I had voiced my concerns about this to the jury foreperson and I believe that he wrote a note to the court and brought it to them; however, I was not privy to what he wrote.

5). There appeared to be a complete disregard for the jury instructions both at the time of deliberation but also during the trial, where I observed a number of jurors talking about the matter before the trial was over.

6). If the court is willing to have a hearing on this matter, I am willing to provide testimony as to the facts as I have presented them in this affidavit.

7). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 9th day of February 2023.


*Patricia Kessel* (signature)

Patricia A. Kessel

2

**Second Chance 4 R.E.A.L.**
Tommy Walker
*Certified Paralegal*
Ph: (716) 348-9861
2ndChance4r.e.a.l@gmail.com
P.O. Box 514 • Buffalo, NY 14215-0514

Clerk of the Court
Western District of New York
2 Niagara Square
Buffalo, N.Y. 14202



USDC WDNY
APR 2 5 2023
BUFFALO


RDC 07

**UNITED STATES POSTAL SERVICE®**  **PRIORITY MAIL EXPRESS®**

EJ 360 207 601 US

**CUSTOMER USE ONLY**
**FROM:** Second Chance 4 R.E.A.L.
Tommy Walker
Certified Paralegal
Ph: (716) 348-9861
2ndChance4r.e.a.l@gmail.com
P.O. Box 514 • Buffalo, NY 14215-0514

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)      PHONE (    )

District Court
2 Niagara Square
Buffalo, N.Y. 14202

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◀ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO
PO ZIP Code: 11365
Scheduled Delivery Date (MM/DD/YY): 4/25/23
Postage: $29.05
Date Accepted (MM/DD/YY): 4/24/23
Scheduled Delivery Time: ☐ 10:30 AM  ☐ 3:00 PM  ☐ 12 NOON  6:00 PM
Insurance Fee:
COD Fee:
Time Accepted: 4:24 ☒ PM
10:30 AM Delivery Fee:
Return Receipt Fee:
Live Animal Transportation Fee:
Special Handling/Fragile:
Sunday/Holiday Premium Fee:
Total Postage & Fees: $29.05
Weight: 4 lbs. 3 ozs.  ☐ Flat Rate
Acceptance Employee Initials:

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM   Employee Signature

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996

FOR DOMESTIC AND INTERNATIONAL USE

PRIORITY MAIL EXPRESS®

UNITED STATES POSTAL SERVICE®
PRIORITY MAIL EXPRESS
POSTAGE REQUIRED