IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff<br><br>v.<br><br>AARON HICKS,<br>　　　Defendant | )<br>)<br>)<br>)　Case No. 1:15-cr-00033-RJA-HBS<br>)<br>)<br>)<br>) |

MOTION FOR JUDICIAL RECUSAL PURSUANT TO 28 U.S.C. §455(a)

　　Now comes the Defendant, Aaron Hicks, pro se, and hereby moves this Honorable Court to recuse itself from any and all further proceedings in this matter pursuant to 28 USC §455(a) and/or §455(b). In support of this motion, the Defendant states the following:

I. BACKGROUND

　　The Defendant was tried twice before this Honorable Court. At the first trial, the Defendant was convicted of Count 2 - Conspiracy to possess with intent to distribute marijuana. The jury acquitted the Defendant of conspiracy to distribute cocaine and also acquitted the Defendant of possession of a firearm in furtherance of a crime of violence. The jury was unable to reach a verdict as to Count 1, which involved a Racketeering Conspiracy.

　　The Defendant was re-tried as to Count 1 and was subsequently convicted. Since the conclusion of the second trial, the Defendant retained a private investigator, Paul H. Lawrence. Through Mr. Lawrence's investigation, the Defendant learned about numerous improprieties during the criminal trials.

Charlene G. Barbary served on the jury during one of the trials. Ms. Barbary has provided an affidavit (Exhibit 1). In the affidavit, Ms. Barbary alleges that there was juror misconduct during the trial. Relevant to this motion, Ms. Barbary alleges that she personally had an ex parte communication with the trial judge during the jury deliberations. Ms. Barbary stated that she felt this ex parte meeting was "peculiar." and she stated that she felt uncomfortable during this meeting. Ms. Barbary alleged that the trial judge discussed the case with her and that the trial judge had informed her that the judge had explained to the Defendant that if the Defendant did not accept a plea, that the Defendant would lose at trial and that the judge would sentence the Defendant to the maximum penalty, which Ms. Barbary believed was 25 to 30 years. Ms. Barbary felt confused as to why only she was being told this information rather than the entire jury as a whole. Ms. Barbary explained her reservations regarding a guilty vote in the case. Ms. Barbary alleged that she felt pressured by the trial judge to change her vote to a guilty vote.

Patricia A. Kessel was a juror in one of the Defendant's trials. Ms. Kessel also provided an affidavit. In her affidavit, Ms. Kessel also stated concerns of juror misconduct and ex parte communications with the trial judge by at least one of the jurors. (Exhibit 2).

Lastly, the Defendant recently received an article that discusses the racial bias of the trial judge that presided over the Defendant's trials. (Exhibit 3).

Currently pending before this Court is the Defendant's Section 2255 Petition to vacate or set aside his conviction. That Petition raises numerous issues including jury misconduct. Also, the Defendant has recently filed his Motion for Relief Pursuant to Rule 59(a) and/or Rule 60(b), based on numerous issues including jury misconduct and judicial misconduct.

-2-

## II. ARGUMENT

Under 28 U.S.C. §455(a) a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned". The purpose of §455(a) "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible", Lijeberg v. Health Sevs. Acquisition Corp., 486 U.S. 847, 865, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The proper inquiry is whether "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal' or alternatively, whether 'a reasonable person, knowing all the facts', would question the judge's impartiality", U.S. v. Yousef, 327 F.3d 56, 169 (2nd Cir. 2003). Specific instances where recusal is required include situations in which the judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding", 28 U.S.C. §455(b)(1). Further, a judge is required to recuse himself from "any proceeding in which his impartiality might be questioned", 28 U.S.C. §455(a).

The showing of personal bias to warrant recusal must ordinarily be based on "extrajudicial conduct...not conduct which arises in a judicial context", Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2nd Cir. 1994). This is because while §455(a) addresses the appearance of impropriety, §455(b) "addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed", U.S. v. Bayless, 201 F.3d 116, 126 (2nd Cir. 2000).

Notably, "[e]vents occurring in the course of judicial proceedings generally do not constitute a basis for recusal unless they indicate that the judge has a deep-seated favortism or antagonism that would make fair judgment impossible", U.S. v. Conte, 99 F.3d 60, 65 (2nd Cir. 1996).

Here, through affidavits, there arise concerns of judicial misconduct and bias toward the Defendant. The ex parte communications between the trial judge and the jury are especially troubling since they were never disclosed to the defendant or the Government during or after trial by the Court. It is well established that private

communications with the between the trial judge and the jury have been said to "create a presumption of prejudice", U.S. v. Treatman, 524 F.2d 320, 325 (8th Cir. 1975). See also, Remmer v. U.S., 347 U.S. 227, 229, 98 L.Ed.2d 654, 74 S.Ct. 450 (1954)(holding that "any private communication, contact, or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is....deemed presumptively prejudicial").

Here, the juror affidavits demonstrate that there were some improprieties that may have occurred during the trial, specifically during jury deliberations, that may have influenced the ultimate verdict in this case. Hearings and proceedings regarding the Section 2255 Petition and Motion for Relief under Rule 60(b) necessarily will involve the trial judge as a witness in those proceedings. While recusal may be appropriate "when a judge expresses a personal bias concerning the outcome of the case at issue", U.S. v. Lovaglia, 954 F.2d 811, 815 (2nd Cir. 1992), under §455(b)(5)(iv), recusal is required when the judge is to the judge's knowledge likely to be a material witness in the proceeding", Hall v. Doering, 185 F.R.D. 639 at n. 3 (D. Kan. 1999).

Moreover, the Supreme Court has held that recusal is required "when the likelihood of bias on the part of the judge is too high to be constitutionally tolerable", . Williams v. Pennsylvania, 136 S.Ct. 1899, 1905, 195 L.Ed.2d 132 (2016). Here, the question is not whether the judge is "actually, subjectively biased, but whether the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias", Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

In the instant case, based on the allegations in the juror affidavits alone the Court should recuse itself. Additionally, as those affidavits and juror testimony in any hearing in these matters will involve this Court to also be potentially questioned as to the juror's allegations, the Court should recuse itself to avoid any conflicts of interest and to the Supreme Court's holdings which requires a fair hearing before a

"judge with no actual bias against the defendant or interest in the outcome of his particular case", Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). As such, the Defendant respectfully requests that the Court recuse itself from any further proceedings in this matter.

## CONCLUSION

For the reasons stated herein, the Defendant respectfully requests that the Court recuse itself from any and all further proceedings in this matter in accordance with 28 USC §455(a) and §455(b).

Respectfully Submitted,

*Aaron Hicks*

Aaron Hicks #23995-055
FCI McKean
PO Box 8000
Bradford, PA 16701

## CERTIFICATE OF SERVICE

I, Aaron Hicks, hereby certify that I mailed a copy of this document to the U.S. Attorney's office on August 8th, 2023 using the FCI-McKean prison mail system.

*Aaron Hicks*

Aaron Hicks

**EXHIBIT 1**

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.

Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No.

UNITED STATES OF AMERICA,

Respondent

_____/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

## SUPPORTING AFFIDAVIT

DECLARATION OF CHARLENE A. BARBARY

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Charlene A. Barbary, do hereby solemnly swear and depose that my date of birth is October 9, 1966 and that I currently reside at _____ nue, Kenmore, New York 14217.

2). I was a member of the Federal Jury on a criminal trial involving Aaron Hicks. My entire experience on this jury is still very clear to me at this time.

3). I was the only African American juror and everyone else was Caucasian with the exception of a female Puerto Rican juror. They seemed to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from.

1

*Charlene G. Barbary*

06/23/2023

4). A number of jurors didn't appear to be happy with my not guilty vote and kept asking me if I needed to see anything again to help in my decision. I said no and I felt I had everything I needed to make my decision. I did not feel that the government had proven their case beyond a reasonable doubt.

5). One white female juror, who I think may have been the foreperson, was noticeably more upset than the others regarding my decision and went out to speak with the judge. This made me very upset and I walked out of the jury room on one occasion crying.

6). The judge had me brought into his chambers alone and began to discuss things with me. I did not like going back there by myself. What I found peculiar and what made me uncomfortable was his telling me that he had explained to Mr. Hicks that if he didn't take a plea and went to trial he was going to lose and then he would sentence him to the max, which I believe was 25-30 years to life.

7.) I didn't understand and still don't know how this was relevant to me as a juror. Because he is a judge I wasn't sure what I should do considering he sits in a position of authority. And I also questioned why he wouldn't have brought this up to all of us jurors & not just me. I didn't feel that this was fair to Mr. Hicks.

8.) I changed my vote to guilty because of the immense pressure I felt from both other members of the jury as well as the judge after he brought me into his chambers alone. I truly regret changing my decision and it wasn't what I believed to be true.

9). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this _____ day of April 2023

*[signature]*

Charlene A. Barbary

2

EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.

Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No._____

UNITED STATES OF AMERICA,

Respondent

/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

## SUPPORTING AFFIDAVIT

DECLARATION OF PATRICIA A. KESSEL

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1). I, Patricia A. Kessel, do hereby solemnly swear and depose that my date of birth is July 30, 1975 and that I currently reside at _____ New York 14033.

2). I was a member of the Federal Jury on a criminal trial involving Aaron Hicks My entire experience on this jury is still very clear to me at this time.

1

06/23/2023

3). Many members of the jury seemed to concerned with going home and not deliberating the matter. They also appeared to me to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from.

4). At the start of deliberations, I felt intimated by a number of the members of the jury. I had voiced my concerns about this to the jury foreperson and I believe that he wrote a note to the court and brought it to them; however, I was not privy to what he wrote.

5). There appeared to be a complete disregard for the jury instructions both at the time of deliberation but also during the trial, where I observed a number of jurors talking about the matter before the trial was over.

6). If the court is willing to have a hearing on this matter, I am willing to provide testimony as to the facts as I have presented them in this affidavit.

7). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 9th day of February 2023.

Patricia A. Kessel

06/23/2023



**EXHIBIT 3**

TRULINCS 23995055 - HICKS, AARON - Unit: MCK-A-A

---

FROM: Jackson, Mr
TO: 23995055
SUBJECT: dwight
DATE: 02/24/2022 07:36:08 PM

IntersectionsI + InjusticeUse + Harm ReductionPolitics + LegalizationMedia + CultureDrugs + MoneyAbout FilterAbout The Influence Foundation

HOMECRIMINAL INJUSTICERACE

Bombshell Paper Names the Federal Judges Guilty of the Most Racist Sentencing

Rory Fleming

August 2, 2021

Subscribe

It has long been known that people of color get harsher criminal sentences in federal criminal court for the same crimes as white people. In the federal criminal justice system, the powerful US Sentencing Commission itself has come to this conclusion.

But the numbers obtained and analyzed by researchers usually have shown this on a birds' eye view-level only. That is by design. The US Judicial Conference has a policy of screening out judges' names from federal databases of cases, claiming that it is concerned about "the potential for judge-specific information taken out of context to be misinterpreted, the administrative burden of compiling information to satisfy outside requests, and the availability to researchers of the information from individual courts."

The policy, in other words, protects federal judges despite the fact that they already receive the utmost insulation from populist anger as well as the democratic process. Thanks to the Constitution, they all receive lifetime tenure.

Six academics have just published a research study in SocArXiv that might go down in history as the single paper that pissed off the legal profession more than any other.

Its title "The Most Discriminatory Federal Judges Give Black and Hispanic Defendants At Least Double the Sentences of White Defendants" summarizes the big-picture story succinctly. But it does more than the headline suggests: Thanks to a newly created database, and the research done here, we now know the names of the judges handing down the most racist sentences from the federal bench. We know in terms of the disparate sentences these judges give to Black and Latinx defendants, compared with those they give to white defendants for the same crimes.

A handful of judges are guilty of what can only be described as horrifically racist sentencing. According to the data, the single worst offender on the federal bench is Senior US District Court Judge C. Darnell Jones, II. Appointed by President George W. Bush in 2008, he rose up the ranks of the legal profession after starting his career as a public defender in Philadelphia. Despite that background, Judge Jones's sentences for Black people are 126 percent harsher and for Latinx people, 156 percent harsher than his sentences for white people.

The mixed crew of academics have hit the accountability nail on the head. This sort of work absolutely needs to be done to change the system.

Federal defense lawyers practicing in Philly might start seriously considering motions to remove Judge Jones from their clients' cases. Ethically speaking, Judge Jones could also just resign.

The same goes for the three other federal judges who demonstrated racist sentencing disparities on a similar scale: Judge Timothy J. Savage, Judge Stanley R. Chesler and Judge Richard J. Arcara.

Each of these three judges was appointed by a Republican president (George W. Bush or Reagan). And like Judge Jones,

TRULINCS 23995055 - HICKS, AARON - Unit: MCK-A-A
---

perhaps surprisingly for some observers, they all practice in the Northeast. Unsurprisingly they are all white, and two of them are former prosecutors.

Judge Chesler was an assistant district attorney in the Bronx and a federal line prosecutor in New Jersey. Similarly, Judge Arcara was the US Attorney for the Western District of New York, as well the elected district attorney of Erie County, New York in the mid-1980s.

The mixed crew of academics on the project four of the six researchers are in math or computer science fields have hit the accountability nail on the head. This sort of work absolutely needs to be done to change the system.

Our system ensures that few mechanisms, as opposed to simple outcry, are in place for the public to register its disapproval of specific federal judges.

But most human beings are capable of feeling shame. These judges will now likely be asked by people in their personal circles their family and friends, as well as professional peers why they wield bigotry like a weapon when they don their judicial robes.

It's deeply unsatisfactory, but in the absence of needed formal accountability mechanisms, such pressure could be the most likely way for these lifelong appointees to reconsider their careers. Absolutely nothing justifies the gratuitous damage they have inflicted.

Photograph by SalFalko via Flickr/Creative Commons 2.0

i-amphtml-auto-lightbox-visited="" style="box-sizing: border-box; margin: 0px; padding: 0px; border: 0px; outline: 0px; font-size: 18px; vertical-align: baseline; background: transparent; max-width: 100%; display: block !important;">" i-amphtml-auto-lightbox-visited="" style="box-sizing: border-box; margin: 0px; padding: 0px; border: 0px; outline: 0px; font-size: 18px; vertical-align: baseline; background: transparent; max-width: 100%; display: block !important;">" i-amphtml-auto-lightbox-visited="" style="box-sizing: border-box; margin: 0px; padding: 0px; border: 0px; outline: 0px; font-size: 18px; vertical-align: baseline; background: transparent; max-width: 100%; display: block !important;">

criminal injusticerace

Two Years After Oakland's Psychedelic Decrim, What's Been the Impact? »

« GOP Senator Behind Marijuana Banking Bill Aims to Restrict Welfare Recipients' Dispensary Spending

Rory Fleming

Rory is a writer and licensed attorney. Previously, he ran Foglight Strategies, a campaign research services firm for forward-thinking prosecutors, and worked for the Law Enforcement Action Partnership, Harvard Law School Fair Punishment Project and the National Network for Safe Communications at the John Jay College of Criminal Justice. He lives in Philadelphia.

San Francisco Hospital Program Offers Harm Reduction to Patients

February 24, 2022

Outcry After High School Students Strip-Searched for Vapes

February 23, 2022

IDA Wants to Fund Research Into Marijuana Legalization Models

Aaron Hicks #23995-055
Federal Correctional Instition McKean
P.O. Box 8000
Bradford, PA 16701





15-CR-33






Clerk, U.S. District
United States CourtHouse, 2 Niagara Square
Buffalo, NY 14202-3350







USDC - WDNY
AUG 1 4 2023
BUFFALO