IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

—————————————————————————

AARON HICKS,

        Petitioner

                                 23-CV-166-RJA

        v.                               15-CR-33-RJA

UNITED STATES OF AMERICA,

        Respondent.

—————————————————————————

## GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION FOR RECUSAL

THE UNITED STATES OF AMERICA, through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby files its response to Petitioner Aaron Hicks's Motion for Judicial Recusal Pursuant to 28 U.S.C. § 455(a).  *See* ECF No. 1022 (dated Aug. 14, 2023) (hereinafter the "Recusal Motion").  Because the motion fails to comply with the applicable procedural and substantive requirements, it should be denied.

## I.      BACKGROUND

**1.    Mr. Hicks's Trials**

Petitioner Aaron Hicks ("Mr. Hicks") was initially tried in 2017 on a three-count Superseding Indictment that charged him with RICO conspiracy in violation of 18 U.S.C. § 1962(d), narcotics conspiracy in violation of 21 U.S.C. § 846, and one count of possession of firearms in furtherance of a crime of violence and drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The jury did not reach a verdict on the RICO conspiracy charge,

and otherwise rendered a split verdict, convicting Mr. Hicks of narcotics conspiracy but acquitting him of the firearms possession count.

The government retried Mr. Hicks on the RICO conspiracy charge in April and May of 2018. Of relevance here, Charlene Barbary ("Ms. Barbary") sat as a juror on Mr. Hicks's second trial. Mot. for Recusal, at 7–8 (Supporting Aff. of Charlene G. Barbary) (hereinafter the "Barbary Affidavit") ("I was a member of the Federal Jury on a criminal trial involving Aaron Hicks."). The jury convicted Mr. Hicks of RICO conspiracy. Jury Verdict, ECF No. 432 (dated May 2, 2018). The Court then sentenced Mr. Hicks to an aggregate term of 360 months imprisonment, consisting of 240 months for his conviction on the RICO conspiracy conviction and 120 months as to his initial conviction for narcotics conspiracy, to run consecutively. *See* J. in a Crim. Case, 1:15-CR-33-1-RJA, ECF No. 473, at 1–2 (dated Feb. 28, 2019).

**2.      Post-Conviction Procedural History**

Mr. Hicks noticed his appeal on February 27, 2019. *See* Notice of Appeal, ECF No. 475 (dated Feb. 27, 2019). The Second Circuit affirmed Mr. Hicks's convictions on July 16, 2021, and he subsequently petitioned the Supreme Court for certiorari, which it denied on February 22, 2022. *See United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021), *cert. denied*, 142. S. Ct. at 1157 (2022). Nearly one year later, on February 21, 2023, Mr. Hicks filed a motion to vacate his convictions pursuant to 28 U.S.C. § 2255, *see* Mem. of Law in Support of Sec. 2255 Mot., ECF No. 964 (dated Feb. 21, 2023), which he amended with the Court's leave on April 25, 2023, *see* Mot. for Leave to File Am. Mot., ECF No. 1005 (dated Apr. 25,

2023) (hereinafter the "Motion to Amend"). In the Motion to Amend, Mr. Hicks included some of the materials he relies on in support of his Recusal Motion, discussed *infra*. *See id.* at 14–17. Mr. Hicks then filed a Motion to Allow Discovery of Jury Selection Transcripts, *see* ECF No. 2025 (dated July 27, 2023) before filing two motions on August 14, 2023: the instant Recusal Motion, *see* ECF No. 1022, and, separately, a Motion for Relief Under Rule 60(b) and Rule 59(a), *see* ECF No. 1021 (dated Aug. 14, 2023). On August 28th, the Court granted the government's motion for an extension and held its response deadlines for Mr. Hicks's other pending motions in abeyance until the Recusal Motion's resolution.

### 3. The Recusal Motion

Mr. Hicks cites three pieces of evidence in support of his Recusal Motion. First and foremost, he attached a signed—but undated—affidavit from Ms. Barbary. *See* Mot. for Recusal, at 7–8.[1] "Pursuant to 28 U.S.C. § 1746," Ms. Barbary alleges that she "did not feel that the government had proved their case beyond a reasonable doubt." *Id.* at 8 ¶ 4. After arriving at this conclusion, Ms. Barbary avers:

> The judge had me brought into his chambers alone and began to discuss things with me. I did not like going back there by myself. What I found peculiar and what made me uncomfortable was his telling me that he had explained to Mr. Hicks that if he didn't take a plea and went to trial he was going to lose and then he would sentence him to the max, which I believe was 25–30 years to life.

*Id.* ¶ 6. Following this alleged interaction, Ms. Barbary notes that she "wasn't sure what [she] should do considering [the judge] sits in a position of authority." *Id.* ¶ 7. Nevertheless, she claims to have "changed [her] vote to guilty because of the immense

---

[1] The Barbary Affidavit shows that it was executed sometime during the month of April 2023, but it omits any precise date. *See* Recusal Mot. at Dkt. 8.

pressure [she] felt from both other members of the jury as well as the judge after he brought [her] into his chambers alone."  *Id.* ¶ 8.  Importantly, Mr. Hicks appended the Barbary Affidavit to his Motion to Amend, which he filed on April 25, 2023—nearly four months before he filed the Recusal Motion.  *See* Mot. to Am. at 14–15.

Mr. Hicks premises his Recusal Motion largely on the Barbary Affidavit. Highlighting the alleged "ex parte communications" that "were never disclosed to the defendant or the [g]overnment during or after trial by the Court," Mr. Hicks argues that the affidavit establishes "judicial misconduct and bias toward the Defendant."  Recusal Mot. at 3.  Mr. Hicks further contends that the Barbary Affidavit shows that judicial misconduct "may have influenced the ultimate verdict in this case."  *Id.* at 4.  In this vein, he suggests that recusal is required because his § 2255 motion and Motion for Relief Under Rule 60(b) advance judicial misconduct claims as a basis for the vacatur of his RICO conviction, and "[h]earings and proceedings regarding" those motions "necessarily will involve the trial judge as a witness in those proceedings."  *Id.*

Second, Mr. Hicks includes an affidavit from Patricia Kessel, another purported juror.[2]  *See* Recusal Mot. at 16–17 (Supporting Aff. of Patricia Kessel) (hereinafter the "Kessel Affidavit").  Though the Kessel Affidavit appears to be unsigned in the Recusal Motion, a seemingly identical copy appended to the Motion to Amend reflects a clear signature.  *See* Mot. to Am. at 17.  Both the copy appended to the Motion to Amend and the

---

[2] Ms. Kessel was a member of Mr. Hicks's first—not second—trial.

one included in the Recusal Motion show that Ms. Kessel executed the affidavit on February 9, 2023.

Turning to the affidavit's substance, Ms. Kessel principally alleges that "[m]any members of the jury seemed to [be] concerned with going home and not deliberating the matter," and also "appeared to be stereotyping Mr. Hicks based on his skin color and what part of the City of Buffalo he came from." *Id.* at 17 ¶ 3. Ms. Kessel states that she "voiced [her] concerns . . . to the jury foreperson," who she "believe[s] . . . wrote a note to the court and brought it to them." *Id.* ¶ 4.

Lastly, Mr. Hicks claims to have "recently received an article that discusses the racial bias of the trial judge that presided over [ ] [his] trials." *Id.* More specifically, the article, which appears to have been published on August 2, 2021, discusses purported sentencing disparities amongst federal defendants. *See id.* at 13–14; *see* Rory Fleming, *Bombshell Paper Names the Federal Judges Guilty of the Most Racist Sentencing*, Filter Mag., (dated Aug. 2, 2021), https://filtermag.org/federal-judges-racist-sentencing/, (last accessed Sept. 11, 2023) (hereinafter the "August 2021 Article"). Despite claiming to have only "recently" received the August 2021 Article, the attachment showed Mr. Hicks received it on February 24, 2022—nearly a full year before he filed his § 2255 motion and 536 days before he filed his Recusal Motion. *See id.* at 13. Beyond noting his receipt of the article, Mr. Hicks makes no argument as to its substantive contribution to his Recusal Motion. *See* Recusal Mot. at 13–14.

## II.    DISCUSSION

The Court should deny the Recusal Motion.  The Motion's principal basis—the undated, untimely Barbary Affidavit—is inadmissible under 28 U.S.C. § 1746, the federal statute governing unsworn declarations.  In any case, Mr. Hicks's reliance on the Barbary Affidavit is untimely—a defect that extends to the substantively meritless Kessel Affidavit, too.  And to the extent Mr. Hicks relies on the August 2021 Article, his failure to suggest any argument as to its relevance waives his reliance on it.  For good measure, though, the August 2021 Article fails to support Mr. Hicks's recusal efforts.  The government discusses each of these issues after briefly reviewing the applicable legal framework.

### 1.    Legal Framework

Mr. Hicks brings his motion pursuant to 28 U.S.C. §§ 455(a) and 455(b).  *See* Recusal Mot. at 1.  Section 455(a) instructs that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The Second Circuit has advised that this subsection "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown."  *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

But, importantly, "'disqualification for lack of impartiality must have a reasonable basis.'"  *Hoffenberg v. United States*, 333 F.Supp.2d 166, 171 (S.D.N.Y. 2004) (quoting *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)).  As such, § 455(a) "requires a showing that would cause an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal."  *Aguinda*, 241 F.3d at

201. A case involving "remote, contingent, indirect or speculative interests" does not generate significant doubt that justice will be done and, therefore, disqualification is not required under such circumstances. *Id.* (internal quotation marks and citations omitted).

Section 455(b) requires recusal under different circumstances. Whereas § 455(a) addresses the "*appearance*" of bias or prejudice, *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (emphasis added) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)), § 455(b) "addresses the problem of *actual* bias by mandating recusal in certain specific circumstances where partiality is presumed," *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (emphasis added). Stated otherwise, "[t]he principal distinction between § 455(a) and (b)" is that the former "addresses the appearance of partiality, guaranteeing not only that a partisan judge will not sit, but also that no reasonable person will have that suspicion," and the latter "delineates specific circumstances where recusal is mandated."[3] *Liteky*, 510 U.S. at 567 (Kennedy, J., concurring). In that regard, § 455(b)(1) provides that a judge who has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" shall disqualify himself. 28 U.S.C. § 455(b)(1).

To support their motions, parties moving for recusal may include affidavits and unsworn declarations detailing instances of impartiality. The court "cannot inquire into the truth of the matters alleged," provided they are non-conclusory and non-speculative, "but

---

[3] Because a reasonable person would question the propriety of a judge's continued participation in a proceeding after a § 455(b) violation is established, a § 455(a) concern "applies" to any § 455(b) issue. *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003).

must accept them as true for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact." *United States v. Int'l Bus. Machines Corp.*, 475 F.Supp. 1372, 1379 (S.D.N.Y. 1979) (citing *Berger v. United States*, 255 U.S. 22, 36 (1921)); *Berger*, 255 U.S. at 36 ("To commit to the judge a decision upon the truth of the facts [alleged in an affidavit made pursuant to § 144] gives chance for the evil against which the section is directed."); *Hodgson v. Liquor Salesmen's Union Loc. No. 2*, 444 F.2d 1344, 1348 (2d Cir. 1971) ("Since the purpose of the section is to avoid the appearance as well as the actual existence of bias or prejudice on the part of the trial judge, the facts stated in the affidavit as the basis for the belief that bias or prejudice exists must be accepted as true by the judge even though he or she knows the statements to be false.").

However, such materials are subject to certain procedural requirements, and "strictly scrutinized" for both timeliness and form. *Lamborn v. Dittmer*, 726 F. Supp. 510, 515 (S.D.N.Y. 1989); *see In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) ("While section 455 has no such [explicit timeliness] requirement, we have without explication previously assumed that timeliness was also requisite under the amended statute. We see no reason why there should not be a timeliness requirement here even without an explicit provision." (citations omitted)); *see also United States v. Nelson*, CR–94–823, 2010 WL 2629742, at *2 (E.D.N.Y. June 28, 2010) ("[A] judge who is presented with a . . . motion for recusal . . . must first determine whether the procedural requirements have been met . . . .").[4]

---

[4] *Lamborn* and *Nelson* both concern affidavits made pursuant to § 455's precursor, 28 U.S.C. § 144. Certainly, the statutes differ in some respect: § 455 "provides guidance to a judge when he is considering recusing himself, . . . § 144 [by contrast] supplies a litigant with the opportunity to file an affidavit that the judge before whom the matter is pending has a personal bias or prejudice sufficient to mandate disqualification." *Liljeberg v. Health Serv.*

Because they were made pursuant to 28 U.S.C. § 1746, which governs unsworn declarations, the Barbary and Kessel Affidavits must comply with the following statutory provisions:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and *dated*, in substantially the following form:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

> (Signature)".

---

*Acquisition Corp.*, 486 U.S. 847, 871 n.3 (1988) (Rehnquist, C.J., dissenting on other grounds). However, § 455(b)(1) "entirely duplicate[s] the grounds of recusal set forth in § 144 ('bias or prejudice')." *Liteky*, 510 U.S. at 548.

Today, affidavits or declarations made in support of recusal motions are commonly filed pursuant to 28 U.S.C. § 1746 as opposed to § 144's affidavit provisions. *See, e.g.*, *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 623 n.175 (S.D.N.Y. 2008); *see also In re Martinez-Catala*, 129 F.3d 213, 218 (1st Cir. 1997) (noting that "an unsworn statement under penalty of perjury [pursuant to 28 U.S.C. § 1746] has the same effect as an affidavit [made pursuant to § 144].""). Unsurprisingly given their similarities, *see Liteky*, 510 U.S. at 548, the Second Circuit directs courts to construe §§ 144 and 455 "*in pari materia*," that is, in similar fashion. *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). As such, the exacting procedural scrutiny courts apply to affidavits made in support of § 144 motions extends to affidavits made in support of § 455 motions, even if they are executed in accordance with the procedural requirements outlined in § 1746. *Cf. Clemmons v. Comm'r of Soc. Sec.*, No. 11-CV-1645 KAM, 2011 WL 6130926, at *4 (E.D.N.Y. Dec. 8, 2011) (applying the same level of scrutiny as to the procedural integrity of both § 144 and § 455 *motions*); *Raghavendra v. Trustees of Columbia Univ.*, No. 06 CIV. 6841 PAC HBP, 2012 WL 2878123, at *4 (S.D.N.Y. July 13, 2012) ("A recusal motion pursuant to Sections 144, 455(a) and 455(b)(1) must satisfy certain procedural requirements."); *United States v. Ahmed*, 788 F.Supp. 196, 204 (S.D.N.Y.1992) ("[T]he test of legal sufficiency of a motion for recusal is the same under both [Sections 144 and 455(b) (1)].").

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

*Id.* §§ 1746(1)–(2) (emphasis added).

## 2.    Analysis

The Recusal Motion should be denied for six specific reasons.  First, though it is principally premised on the Barbary Affidavit's allegations, *see* Recusal Mot. at 2 ("Relevant to this motion, Ms. Barbary alleges that she personally had an ex parte communication with the trial judge during the jury deliberations."); *see also id.* at 3–5, the Barbary Affidavit is inadmissible under 28 U.S.C. § 1746 because it is undated.  Second, and relatedly, the Recusal Motion is untimely, as Mr. Hicks's Motion to Amend shows that he had the Barbary Affidavit in his possession since April 2023—at the earliest—yet inexplicably failed to move for recusal until August.  Third, that untimeliness also applies to Mr. Hicks's reliance on the Kessel Affidavit, which was executed by a juror sitting on Mr. Hicks's 2017 trial nearly six years later, on February 9, 2023, and first introduced to this Court on April 25th in Mr. Hicks's Motion to Amend.  Fourth, irrespective of these procedural deficiencies, the Kessel Affidavit fails to articulate any basis for recusal.  Fifth, Mr. Hicks's reliance on the August 2021 Article is untimely, and his failure to develop any argument with regards to the article means that he has waived any reliance on it.  Sixth, and finally, the article provides no ground for recusal.

a.    **The Undated, Untimely Barbary Affidavit is Inadmissible**

The Barbary Affidavit is inadmissible under federal law.  Section 1746 expressly provides that an "unsworn declaration" may have the same effect as a "sworn declaration" provided it is made "in writing of such person which is subscribed by him, as true under penalty of perjury, and *dated*."  *Id.* (emphasis added).  Section 455 also requires recusal motions (and their supporting contents) be timely filed.  *See In re Int'l Bus. Machines Corp.*, 618 F.2d at 932.  The Barbary Affidavit is deficient—and thus inadmissible—in both respects.  Accordingly, it cannot serve as a basis for the Court's recusal.

i.    **The Barbary Affidavit Fails to Comply with § 1746's Dating Provision**

First, the absence of a precise date renders the Barbary Affidavit inadmissible under § 1746.  *See* Recusal Mot. at 15.  As a panel of the Second Circuit explained in *Reynolds v. Sealift, Inc.*, unsworn affidavits "constitute evidence if [they] [are] in writing, *dated*, and declared true under penalty of perjury."  311 F. App'x 422, 425 (2d Cir. 2009) (emphasis added) (unpublished).  Considering these requirements, the *Reynolds* panel concluded that "[t]he district court acted within its discretion in excluding . . . [t]hree . . . affidavits [that] lacked a precise date."  *Id.*  That approach is uncontroversial across the courts of appeals, which have broadly held that unsworn declarations made under § 1746 *must* include a precise date of execution.  *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 854 n.2 (1st Cir. 2016) (concluding that an undated declaration executed pursuant to § 1746 was "intrinsically deficient" and failed to "comport with statutory requirements"); *Brown v. Powell*, 187 F.3d 628, *2 (4th Cir. 1999) (unpublished table decision) ("Section 1746 requires a declaration to be subscribed under penalty of perjury and dated."); *Puente v. Ridge*, 324 F. App'x 423, 430

(5th Cir. 2009) (unpublished) (concluding that an "undated, unnotarized statement" failed to comply with § 1746); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1995) ("Although Bonds' additional affidavits were subscribed under penalty of perjury, they were undated.  Given the explicit language of the statute, they must therefore be excluded from consideration." (emphasis added)); *Russell v. Cook Cnty.*, 661 F. App'x 443, 445 (7th Cir. 2016) (unpublished) (noting that declarations made under 28 U.S.C. § 1746 must show "exactly when the document was signed"); *McMiller v. Corrections Corp. of Am.*, 695 F. App'x 344, 348 (10th Cir. 2017) (unpublished) ("Perhaps the printed name represents [the appellant's] signature, but without a date, the declaration does not satisfy 28 U.S.C. § 1746."); *Roy v. Ivy*, 53 F.4th 1338, 1349 n.7 (11th Cir. 2022) ("Inmate Mason's unsworn statement does not satisfy § 1746 for the additional reason that it was not dated.").

In view of this authority, district courts within the Second Circuit have routinely exercised their discretion against admitting undated, unsworn declarations into evidence. *See, e.g.*, *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 209 (E.D.N.Y. 2021) (declining to accept plaintiff's undated, unsworn declaration); *Williams v. Keisler*, No. 07 CV 503 (ARR), 2007 WL 9723294, at *4 (E.D.N.Y. Oct. 30, 2007) ("The document is not actually an affidavit, since it is unsworn, and is not admissible as an unsworn declaration because it is undated."); *Perkins v. Teele*, No. 3:15-CV-01137 (JCH), 2018 WL 3541864, at *2 n.3 (D. Conn. July 23, 2018) (disregarding an undated, unsworn declaration); *but see BMS Entm't/Heat Music LLC v. Bridges*, No. 04 Civ. 2584(PKC), 2005 WL 2482493, at *2 n. 1 (S.D.N.Y. Oct. 7. 2005) (accepting an undated unsworn declaration under § 1746).

This Court should follow suit and find the undated Barbary Affidavit inadmissible under § 1746. Notably, a finding of inadmissibility forms a sufficient basis to disregard its contents. *Cf. United States v. Johnpoll*, 748 F.Supp. 86, 89 (S.D.N.Y. 1990) ("In considering Johnpoll's petition [for recusal], I will disregard all allegations not certified by counsel [pursuant to 28 U.S.C. § 144]."); *Hoffenberg*, 333 F.Supp.2d 166, 177 n.5 (S.D.N.Y. 2004) (noting that the "procedural prerequisites" attached to recusal affidavits "are strictly observed, and deviation from the statutory requirements provides sufficient grounds for denial of a motion for recusal"); *see generally Berger*, 255 U.S. at 32 (noting that it "is imposed upon the judge the duty of examining the affidavit to determine whether or not it is the affidavit specified and required by the statute and to determine its legal sufficiency"). Accordingly, the Court should hold that the inadmissible Barbary Affidavit cannot contribute to the Recusal Motion's legal sufficiency and deny the Recusal Motion principally on this basis.

### ii.    Mr. Hicks's Failure to Timely Rely on the Barbary Affidavit Renders the Recusal Motion Untimely

In addition to "form," the Barbary Affidavit—and, more generally, the Recusal Motion—fails on "timeliness" grounds, too. *Lamborn*, 726 F.Supp. at 514. As noted, *supra*, recusal motions made pursuant to § 455 must be timely filed. *See In re Int'l Bus. Machines Corp.*, 618 F.2d at 932 (concluding that § 455 contains an implicit timeliness requirement). To that end, "recusal motions are to be made '*at the earliest possible moment* after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir. 1996) (emphasis added) (quoting *Apple*, 829 F.2d at 333); *see LoCascio v. United States*, 473 F.3d 493, 497 (2d Cir. 2007). As the Second Circuit has explained,

> it is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*In re Int'l Bus. Machines Corp.*, 45 F.3d at 643.

This rule is so strictly enforced that "[r]ecusal motions are often denied on the basis of untimeliness" even "when there has been only a short delay." *Lamborn*, 726 F.Supp. at 515. That said, "the actual time elapsed between the events giving rise to the charge of bias or prejudice and the making of the motion is not necessarily dispositive." *Apple*, 829 F.2d at 333–34. Rather, courts examine several factors, including whether: "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." *Id.* at 334 (internal citations omitted). Under the balance of these factors, the Recusal Motion is untimely.

Specifically, Mr. Hicks has substantially participated in his post-conviction proceedings, filing four motions *after* submitting his initial § 2255 motion on February 21, 2023. As part of this litigation, Mr. Hicks filed a Motion to Amend on April 25, 2023, wherein he included the undated Barbary Affidavit and the February 9th Kessel Affidavit. Mr. Hicks's inclusion of the Barbary Affidavit in his Motion to Amend thus demonstrates that the "earliest possible moment" in which he could have moved for recusal was April 25, 2023, when he filed that motion. *Gil. Enters., Inc.*, 79 F.3d at 247. Moreover, it is possible

that Mr. Hicks learned of Ms. Barbary's allegations before she executed her affidavit, considering he was convicted in May of 2018 and did not file his § 2255 motion, wherein he first floated concerns of bias and misconduct, until February 21, 2023.  *See* Mem. of Law in Support of Sec. 2255 Mot., ECF No. 964 (dated Feb. 21, 2023).  Accordingly, four months reflects the *minimum* amount of delay between Mr. Hicks learning of Ms. Barbary's allegations and his filing the Recusal Motion.

Despite the Second Circuit's requirements, Mr. Hicks inexplicably waited nearly four months to move for the Court's recusal, offering no "good cause" for the delay.  *Apple*, 829 F.2d at 334.  Multiple district courts have denied comparably untimely recusal motions.  *See United States v. Durrani*, 835 F.2d 410 (2d Cir. 1987) (affirming district court's rejection of recusal motion as untimely because motion was filed four months after events of which movant complained); *Universal City Studios, Inc. v. Reimerdes*, 104 F.Supp.2d 334, 350 (S.D.N.Y. 2000) (recusal motion brought after four-month delay deemed untimely).  This Court should, too.

In sum, the Barbary Affidavit is inadmissible and should not contribute to the Court's assessment of the Recusal Motion's legal sufficiency.  In clear contravention of federal law, it lacks a precise date.  And what dating evidence it does contain reveals that Mr. Hicks failed to timely file his Recusal Motion.  These sorts of defects do not survive the exacting scrutiny this Court should apply to recusal efforts.

**b.    The Kessel Affidavit is Both Untimely and Meritless**

Mr. Hicks's reliance on the Kessel Affidavit is similarly unavailing.  For the same reasons discussed in Sec. II.B.1.b, *supra*, Mr. Hicks's reliance on the Kessel Affidavit is untimely.  Untimeliness aside, the Kessel Affidavit fails to support the Recusal Motion for the additional reason that it is meritless.  Accordingly, it cannot serve as a basis for the Court's recusal.

**i.    Mr. Hicks's Failure to Timely Rely on the Kessel Affidavit Renders the Recusal Motion Untimely**

The same principles underscoring the Barbary Affidavit's untimeliness also render the Kessel Affidavit untimely.  *See supra*, Sec. II.B.1.b., *supra*.  In fact, Mr. Hicks's reliance on the Kessel Affidavit is even more untimely.  Specifically, Ms. Kessel served as a juror on Mr. Hicks's first trial, which took place in 2017.  Ms. Kessel did not execute her affidavit until February 9, 2023—almost six years later.  *See* Recusal Mot. at 21.  And even then, Mr. Hicks failed to use the Kessel Affidavit as a basis for recusal until six months later.  *See id.* (dated Aug. 14, 2023).  Certainly, then, Mr. Hicks failed to avail himself of the Kessel Affidavit "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis" for his claim, *Gil Enters., Inc.*, 79 F.3d at 247, and, accordingly, the Court should disregard the Kessel Affidavit on this basis.

**ii.    On the merits, the Kessel Affidavit fails to state a basis for recusal**

Alternatively, the Court should conclude that the Kessel Affidavit fails to articulate grounds for recusal.  Ms. Kessel alleges that she was a juror during one of Mr. Hicks's trialsand that "members of the jury seemed to [be] concerned with going home and not

deliberating the matter." Recusal Mot. at 21. Similarly, she claims that members of the jury "disregard[ed] . . . the jury instructions" and stereotyped Mr. Hicks "based on his skin color and what part of the City of Buffalo he came from." *Id.* Moreover, she avers that she "felt intimated [sic] by a number of the members of the jury," and that a jury foreperson "wrote a note to the court," potentially relaying her concerns.[5] *Id.* Irrespective of their truth, none of these allegations supply a basis for the Court's recusal.

For starters, allegations that members of the jury failed to comply with instructions, were concerned with going home, stereotyped Mr. Hicks, and otherwise intimidated Ms. Kessel do not pose a basis for an "objective observer" to question the Court's "impartiality." *Liljeberg*, 486 U.S. at 861; *see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which *his* impartiality might reasonably be questioned." (emphasis added)). Nor do they implicate any provision in § 455(b).

That is because it is axiomatic that whatever bias a *juror* might have does not automatically extend to the *judge*. *See Smulley v. Safeco Ins. Co. of Illinois*, No. 21-2124-CV, 2022 WL 16753118, at *2 (2d Cir. Nov. 8, 2022), *cert. denied*, 143 S. Ct. 2463 (2023)

---

[5] Based on the minute entries for Mr. Hicks's first trial, it is unclear if the jury foreperson ever submitted a note to the Court regarding Ms. Kessel's alleged discomfort. *See* Minute Entry (dated Oct. 12, 2017) (same); Minute Entry (dated Oct. 13, 2017) (same); *see also* Sealed Court Exs. 2, 5, 7, 9, 11, 12, 13, 15, 16, 17, 18, 19, 21, 23, 25, 27, ECF No. 254 (dated Oct. 13, 2017); Sealed Court Exs. 1, 4, 6, 8, 10, 14, 20, 22, 24 and 26, ECF No. 253 (dated Oct. 13, 2017). Regardless, it is well settled that the jury may submit inquiries to the court and, therefore, submission of a note does not present a ground for the court's recusal. *See generally United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981) (discussing the practice of a jury submitting notes to the court).

("Recusal is proper when a party has filed a timely and sufficient affidavit demonstrating that the *judge* . . . has a personal bias or prejudice . . . in favor of any adverse party." (emphasis original and internal quotations omitted)).  Despite this fundamental premise, the Kessel Affidavit, focuses on members of the jury and the biases *they* might have held.  *See* Recusal Mot. at 21.  Mr. Hicks fails to explain how these biases "prevent or impede [the Court's] impartiality."  *Berger*, 255 U.S. at 33.  And that failure, of course, precludes him from relying on the Kessel Affidavit in its entirety, as the object of § 455 is to avoid both "the appearance of partiality," or actual partiality, on the part of the judge—not the jury. *Liljeberg*, 486 U.S. at 860 (internal quotations omitted).  Accordingly, even if the Court were inclined to overlook the Recusal Motion's untimeliness vis-à-vis the Kessel Affidavit, it should still deny the motion due to the affidavit's substantive deficiency.

### c.    The August 2021 Article Offers No Basis for the Court's Recusal

The last cited basis for the Court's recusal—the August 2021 Article discussing purported sentencing disparities in federal court—fails to support Mr. Hicks's recusal bid in three respects.  First, Mr. Hicks's use of the article is untimely, as the exhibit evidencing the article shows that Mr. Hicks received it on February 24, 2022, but failed to file it until August 14, 2023.  Second, Mr. Hicks wholly waived any reliance on the article by failing to develop any argument regarding its relevance to his recusal motion.  Third, and finally, purported sentencing disparities do not form a basis for the court's recusal.

### i.    Mr. Hicks's Did Not Timely Move for Recusal After Receiving the Article

As previously noted, recusal motions are strictly scrutinized for timeliness.  *See*

*Lamborn*, 726 F. Supp. at 514.  Mr. Hicks's reliance on the August 2021 Article cannot satisfy § 455's "timeliness" requirement.  *See In re Int'l Bus. Machines Corp.*, 618 F.2d at 932 (announcing that § 455 contains an implicit timeliness requirement).  More specifically, the exhibit of the article Mr. Hicks attached to his Recusal Motion shows that he received it on February 24, 2022—nearly a full year before he filed his § 2255 motion and 536 days before he filed his Recusal Motion.  *See* Recusal Mot. at 13.  Quite clearly, Mr. Hicks did not file his Recusal Motion "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis" for his claim.  *Gil Enters., Inc.*, 79 F.3d at 247.  For this reason alone, the Court should strike the August 2021 Article from its consideration.

### ii.    Mr. Hicks's Failure to Develop an Argument Regarding the Article Waived Any Reliance He Could Place in it

Mr. Hicks also waived any argument he could make regarding the August 2021 Article's relevance to his recusal efforts by failing to make any argument to that end at all. While *pro se* filings are subject to liberal standards of construction, those standards do not authorize a wholesale departure from the party-presentation principle that otherwise "assigns to courts the role of neutral arbiter of matters the parties present."  *United States v. Sineneng-Smith*, --- U.S. ----, 140 S.Ct. 1575, 1579 (2020).  In keeping with this principle, the Second Circuit has cautioned that courts "need not act . . . advocate[s] for *pro se* litigants," *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1997), and "cannot read into *pro se* submissions . . . arguments that the submissions themselves do not '*suggest*,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see Terry v. Inc. Village of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016) ("Although we accord filings from pro se litigants a high degree of solicitude,

even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief." (quoting *Donofrio v. City of New York*, 563 F. App'x. 92, 93 (2d Cir. 2014) (summary order))).

The Second Circuit's waiver doctrine is applicable here, as there are no "identifiable arguments" related to the August 2021 Article in Mr. Hicks's Recusal Motion. *Terry*, 826 F.3d at 632–33 (internal quotations omitted). Mr. Hicks alludes to the article only in the factual background section of his brief—and even then, he refers to it only once. *See* Recusal Mot. at 2 ("Lastly, the Defendant recently received an article that discusses the racial bias of the trial judge that presided over the Defendant's trial."). Beyond this bare reference, he fails to offer any argument as to why the article requires the Court's recusal. *See id.* As such, Mr. Hicks waived any argument he could have made in support of the August 2021 Article. *See Wilkins v. United States*, 598 U.S. 152, 157 (2023) ("For purposes of efficiency and fairness, our legal system is replete with rules like forfeiture, *which require parties to raise arguments themselves and to do so at certain times*." (emphasis added and internal quotations omitted)); *see also Sineneng-Smith*, 140 S.Ct. at 1579 (discussing waiver in the context of the party-presentation principle); *Knowles v. Iowa*, 525 U.S. 113, 116 n.2 (1998) (concluding that an appellee "waived [an] argument by failing to raise it in its brief"). Therefore, even if it were to overlook Mr. Hicks's untimely reliance, the Court should still disregard the August 2021 Article when assessing the legal sufficiency of the Recusal Motion.

### iii.     On the Merits, the Article Offers No Basis for Recusal

Finally, to the extent Mr. Hicks's reference to the article could suggest an argument bearing on its relevance to his recusal effort, that argument must be rejected.  The article's vague references to purported sentencing disparities does not create a cognizable claim for recusal under either § 455(a) or § 455(b).  More specifically, any argument related to the August 2021 Article necessarily fails because the article does not concern activity arising from an extrajudicial source that would cause an objective observer to question the Court's impartiality, *see* § 455(a), and no mandatory provision of recusal contained in § 455(b) is applicable.

Section 455(a)'s requirement "that a judge recuse himself whenever his 'impartiality might reasonably be questioned,' is commonly limited to those circumstances in which the alleged partiality 'stem[s] from an extrajudicial source.'"  *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (first quoting § 455(a); and then quoting *Liteky*, 510 U.S. at 544).  The "extrajudicial source" doctrine refers to activities arising outside of the "judicial dut[y]."  *Carlton*, 534 F.3d at 101.  Plainly, a judge's participation in a sentencing hearing is not "extrajudicial" but instead falls squarely within the ambit of the judicial "dut[y]."  *Id.*  Indeed, Congress expressly conferred the power to sentence criminal defendants to the judiciary.  *See* 18 U.S.C. § 3553; *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976) (noting that information gleaned from a sentencing hearing regarding defendants did not come from an "extrajudicial source").  As such, even if the Court were to excuse Mr. Hicks's untimely reliance on the August 2021 Article *and* his waiver, the August 2021 Article cannot substantively contribute to his recusal efforts.

### III.  <u>CONCLUSION</u>

None of the three bases cited in support of Mr. Hicks's Recusal Motion can sustain his efforts.  The Barbary Affidavit is procedurally defective, the Kessel Affidavit is equal parts procedurally and substantively deficient, and the August 2021 Article triply fails on procedural, preservation, and substantive grounds.  For these reasons, the government respectfully requests that the Court deny Mr. Hicks's Recusal Motion (ECF No. 1022).

DATED:  Buffalo, New York, September 15, 2023.

TRINI E. ROSS.
United States Attorney

BY:    s/CASEY L. CHALBECK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov