

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

---

*Federal Center*     *716/843-5700*
*138 Delaware Avenue*
*Buffalo, New York 14202*    *Writer's Telephone: 716/843-5846*
                                             Timothy.Lynch@usdoj.gov

December 4, 2023

**VIA ELECTRONIC MAIL**
Mark Foti, Esq.
16 W. Main Street, Suite 100
Rochester, NY 14614
mark@fotilaw.com

           **Re:**    *United States v. Arrington*
                      *15-CR-33-EAW*

Dear Mark:

       Pursuant to Chief Judge Elizabeth A. Wolford's November 30, 2023 Text Order in *United States v. Arrington*, 15-CR-33, I am writing to apprise you of some of the issues raised in United States Attorney Trini E. Ross's November 22, 2023 letter to Chief Judge Wolford. The information provided below relates to Roderick Arrington and has been cleared by other members of the United States Attorney's Office who are handling the matter of *United States v. Peter Gerace*. I am not a member of that investigative team, so I have limited knowledge of the matter.

       In early November 2023, the government uncovered a conspiracy, which the investigative team believes involves Roderick Arrington, Peter Gerace, as well as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, among others. Because you represent Mr. Arrington and Mr. Gerace, the government's investigation raises a potential conflict of interest for you.

**BACKGROUND**

1. **Judge Sinatra's Recusals in *United States v. Roderick Arrington*, 15-CR-33, and *United States v. Bongiovanni and Gerace*, 19-CR-227**

                     **A.**   **Judge Sinatra's Recusal in *Arrington***

       On October 19, 2022, following a mistrial, the case of *United States v. Roderick Arrington*, 15-CR-33, was transferred from District Judge Richard J. Arcara to District Judge John L. Sinatra, Jr. *See* 15-CR-33, Dkt. 879. After reviewing the government's witness list, Judge Sinatra advised the parties that he had to recuse himself from the case pursuant to Title 28,

United States Code, Section 455(b)(5)(iv) because retired Buffalo Police Department Detective Michael Mordino, Judge Sinatra's uncle, was one of the government's expected witnesses. Mr. Mordino was the lead detective on one of the homicides at issue in *Arrington*. Following Judge Sinatra's recusal, the *Arrington* case was transferred to Chief Judge Wolford.

███████████████████████████████████████████████████████████████

### B. Judge Sinatra's Recusal in *Bongiovanni and Gerace*

In January 2020, *United States v. Bongiovanni and Gerace*, 19-CR-227,[1] was assigned to Judge Sinatra. Following pretrial litigation and multiple adjournments, a trial was scheduled to begin on August 14, 2023.

In March 2023, the government moved to revoke defendant Peter Gerace's bail following the return of a four-count Indictment against Gerace alleging, among other crimes, witness tampering in violation of 18 U.S.C. § 1512(b)(1) and (2). *See* Indictment, Dkt.1, 23-CR-37 (dated Mar. 23, 2023). Gerace was represented by Steven M. Cohen and Eric M. Soehnlein. On March 28, 2023, following a detention hearing, Judge Sinatra ordered Gerace detained. *See id.*, Order of Detention, Dkt. 8. Thereafter, the two indictments were joined.

On May 24, 2023, Gerace moved for reconsideration of Judge Sinatra's detention order and to otherwise reopen the detention hearing. Dkt. 491. On May 31, 2023, Judge Sinatra denied the motion to reopen the detention hearing. On that date, Mr. Cohen told the Buffalo News, "The government is doing everything in its power to prevent Gerace's defense from preparing our client for trial. … Regrettably, they have found a sympathetic judge who has ordered all these restrictions." *See* Lakamp, Patrick and Michel, Lou, *Judge Refuses to Suppress Evidence From Searches of Gerace's Home and Strip Club,* The Buffalo News, May 31, 2023.[2] *See also* Dkt. 543 (Government's Motion for a Gag Order, at 7-10 (listing public comments made by Mr. Cohen regarding the *Bongiovanni and Gerace* case).

On June 5, 2023, Judge Sinatra denied the motion for reconsideration, continuing Gerace's detention. Dkts. 499, 504. On that date, Mr. Cohen told the Buffalo News, "This judge continues to be particularly harsh to Mr. Gerace, and we see no legitimate basis for that." "He appears to accept whatever the prosecution says at face value, even though they are bare allegations not supported by evidence." *See* Lakamp, Patrick, *Judge Refuses to Release Strip Club Owner Ahead of Bribery, Sex, and Drug Trafficking Trial*, The Buffalo News, June 6, 2023.[3] *See also* Dkt. 543, at 9.

---

[1] Unless otherwise specified, citations to the docket refer to case number 19-CR-227.
[2] The article may be found online at https://buffalonews.com/news/local/judge-refuses-to-suppress-evidence-from-searches-of-geraces-home-and-strip-club/article_eeee9966-ff1a-11ed-8610-6fccddc702b4.
[3] The article may be found online at https://buffalonews.com/news/local/judge-refuses-to-release-strip-club-owner-ahead-of-bribery-sex--and-drug-trafficking/article_3fd18366-0475-11ee-a8d3-5fb60c07e3c4.html.

On June 20, 2023, Gerace filed a sealed witness list which identified more than 250 potential defense witnesses. The witness list was signed by both Mr. Cohen and Mr. Soehnlein. 

That same day Judge Sinatra scheduled a status conference for June 21, 2023 to address Gerace's witness list. Dkt. 526. At the conference, Judge Sinatra observed that 28 U.S.C. § 455(b)(5)(iv) required his recusal if ▮▮▮▮▮ "is likely to be called as a material witness at trial." Exhibit A (6/21/23 Transcript) at 4:21-25. Judge Sinatra then asked Mr. Cohen to proffer why ▮▮▮▮▮ would be potential defense witnesses. Mr. Cohen responded that, with regard to those witnesses and a third potential defense witness:

> [W]e're getting that from the material that the Government has turned over to us as part of its Jencks. The Grand Jury testimony that we've been given access to brings those names up significantly and I have a duty to reserve my rights to call them. If you are asking whether I intend to call them, we have to see how the case plays out. I don't know yet, but, certainly, the Government felt it was important enough to question these three individuals—we'll say two individuals. And they are on my list and they have to stay there and whether I use them depends upon the case that the Government puts on.

*Id.* at 5:3-17.

\*\*\*

> I've got the Grand Jury testimony of the various people who testified about the relationships. And as I said, I didn't whip up these names out of thin air. I've got chapter and verse of where they came from, so if - and you're right if you are suggesting, Judge, this is a character case. That's all this case is is a character case.

*Id.* at 7:4-10.

After continued discussion, Judge Sinatra observed that he was "s[k]eptical of this tactic," which "appear[ed] to be gamesmanship—some kind of a maneuver of some sort."

3

Exhibit A at 10:21-22. Judge Sinatra nonetheless concluded that he was "duty bound to recuse." *Id.* at 11:5.[4] Judge Sinatra ultimately concluded, as he had in *Arrington*, that 28 U.S.C. § 455(b)(5)(iv) required his recusal. *See* Dkt. 535.

That same day, June 21, 2023, in an interview with *The Buffalo News*, Mr. Cohen stated: "We don't know until the government puts on their case why they brought up these names…. So we are reserving the right to call them, and let's see how the case fleshes out. That's it." The article, "Judge recuses himself from strip club owner case after voicing suspicion of legal `gamesmanship.'"[5] Mr. Soehnlein also gave a statement to *The Buffalo News*: "We don't have to pick a way to defend [Gerace] until we see the government's proof. That's fair to us…And one very plausible, very likely way to defend this case involves testimony from those individuals. Because they're going to be talking about Mr. Gerace in connection to circumstances that are very close to the allegations of the government's case. And so we have reserved the right to put on that kind of case…. It's our duty to reserve that right." *Id.* The Buffalo News article recounted that Mr. Cohen "has been critical of Sinatra over some of his rulings," observing, for example, that Mr. Cohen had previously stated that the government "ha[s] found a sympathetic judge who has ordered all of these restrictions." *Id.*

After Judge Sinatra recused himself, the case was transferred to District Judge Lawrence J. Vilardo. Dkt. 537. There followed a series of counsel changes as to defendant Gerace that ultimately resulted in the trial being adjourned from August 14, 2023 to October 23, 2023.

---

[4] Mr. Soehnlein asked to speak with Judge Sinatra at a sidebar after Judge Sinatra's statements and ruling. Mr. Soehnlein stated:

> I was concerned about your comments about gamesmanship and so I want to make the record crystal clear on that point, okay? With respect to ▇▇▇▇ [this name is redacted in the transcript], . . . a number of allegations the Government has made in this case has [sic] to do with Mr. Gerace's relationship with law enforcement, payment of money to law enforcement for alleged improper purposes. He does have a relationship with several members of law enforcement. He has a particularly close relationship with that individual, that is included [sic] in payment of money for various things, various charitable contributions and things of that nature. As a defense attorney and a trial practitioner, that is a very important thing to bring out in front of a jury and I think it's important. I wanted the record to be made clear and I wanted Your Honor to understand that the decision to include that name wasn't taken lightly. It really wasn't, okay?

Exhibit A at 12:1-18. Of note, neither the Superseding Indictment nor any of the government's expected proof at trial pertains to payments that Gerace made to ▇▇▇▇▇▇▇, whether charitable or otherwise.

[5] The article can be found online at https://buffalonews.com/news/local/crime-and-courts/judge-recuses-himself-from-strip-club-owner-case-after-voicing-suspicion-of-legal-gamesmanship/article_b3bd89ee-103e-11ee-82da-53ded94b7e1b.html.

On June 26, 2023, less than a week after Mr. Cohen and Mr. Soehnlein's submission of the witness list to Judge Sinatra, Mr. Soehnlein moved to withdraw as counsel for Gerace. Dkt. 541. Mr. Soehnlein's affidavit and memorandum of law were submitted to Judge Vilardo *ex parte*, such that the government had no information regarding the basis for the motion other than a vague reference in the Notice of Motion to ethical issues. After being relieved from the case in July 2023, Mr. Soehnlein was reassigned to the case in September 2023.

Gerace is currently represented by you and Mr. Soehnlein. Trial is scheduled to begin in the Gerace matter on January 8, 2024. Sentencing for Mr. Arrington is pending.

Let me know if you have any questions concerning the information contained in this letter. I'll see you in court tomorrow.

Very truly yours,

TRINI E. ROSS
United States Attorney

BY:  s/ TIMOTHY C. LYNCH
Assistant United States Attorney

cc:  Hon. Elizabeth A. Wolford

# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


   UNITED STATES OF AMERICA,   *        Docket No.
                                        1:19-CR-00227-JLS-MJR
                                        1:23-CR-00037-JLS-MJR
                                *
                                *       Buffalo, New York
              v.                *       June 21, 2023
                                *       9:33 a.m.
                                *
   JOSEPH BONGIOVANNI (1),              STATUS CONFERENCE
   PETER GERACE, JR. (3),       *
                                *
              Defendants.       *
                                *
   * * * * * * * * * * * * * * *



                 CORRECTED TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:            U.S. DEPARTMENT OF JUSTICE,
                               Criminal Division,
                               Public Integrity Section,
                               Jordan A. Dickson, ESQ.,
                               1331 F Street NW,
                               Washington, DC  20004,
                               And
                               TRINI M. ROSS, ESQ.,
                               UNITED STATES ATTORNEY,
                               By JOSEPH M. TRIPI, ESQ.,
                                  DAVID J. RUDROFF, ESQ.,
                                  NICHOLAS COOPER, ESQ.,
                               Federal Centre,
                               138 Delaware Avenue,
                               Buffalo, New York  14202,
                               Assistant United States Attorneys,
                               Appearing for the United States.


For Defendant (1):             THE LAW OFFICE OF PARKER R. MacKAY,
                               By PARKER R. MacKAY, ESQ.,
                               3110 Delaware Avenue,
                               Kenmore, New York  14217.
```

|   |                        |                                         |
|---|------------------------|-----------------------------------------|
| 1 |                        | And                                     |
|   |                        | SINGER LEGAL, PLLC.,                    |
| 2 |                        | By ROBERT C. SINGER, ESQ.,              |
|   |                        | 80 East Spring Street,                  |
| 3 |                        | Williamsville, New York  14221.         |
| 4 | For Defendant (3):     | TIVERON LAW, PLLC,                      |
|   |                        | By STEVEN M. COHEN, ESQ.,               |
| 5 |                        | 2410 North Forest Road,                 |
|   |                        | Suite 301,                              |
| 6 |                        | Getzville, New York  14068.             |
|   |                        | And                                     |
| 7 |                        | LIPPES MATHIAS WEXLER FRIEDMAN, LLP,    |
|   |                        | By ERIC M. SOEHNLEIN,  ESQ.,            |
| 8 |                        | 50 Fountain Plaza,                      |
|   |                        | Suite 1700,                             |
| 9 |                        | Buffalo, New York  14202.               |
|10 |                        |                                         |
|   | The Courtroom Deputy:  | KIRSTIE L. HENRY                        |
|11 |                        |                                         |
|12 | The Court Reporter:    | BONNIE S. WEBER, RPR,                   |
|   |                        | Notary Public,                          |
|13 |                        | Robert H. Jackson Courthouse,           |
|   |                        | 2 Niagara Square,                       |
|14 |                        | Buffalo, New York  14202,               |
|   |                        | Bonnie_Weber@nywd.uscourts.gov.         |

Proceedings recorded by mechanical stenography,
transcript produced by computer.

(Proceedings commenced at 9:33 a.m.)

**THE CLERK:** All rise.

The United States District Court for the Western District of New York is now in session. The Honorable John Sinatra presiding.

**THE COURT:** Please be seated.

1      **THE CLERK:**  The Court advises parties and listeners
2  that they are strictly prohibited from recording these
3  proceedings in whole or in part by any device.
4      In United States versus Joseph Bongiovanni and Peter
5  Gerace, Case Number 19-CR-227 and 23-CR-37, this is the date set
6  for a status conference.
7      Counsel for the Government, please state your
8  appearances for the record.
9      **MR. TRIPI:**  Joseph Tripi for the United States.
10     **MR. RUDROFF:**  David Rudroff for the United States.
11     **MR. DICKSON:**  Jordan Dickson for the United States.
12     **MR. COOPER:**  Nicholas Cooper for the United States.
13     **THE CLERK:**  Counsel for defendant Bongiovanni, please
14  state your appearances.
15     **MR. MacKAY:**  Good morning, Your Honor.  Parker MacKay
16  and Robert Singer for Mr. Bongiovanni.
17     **THE CLERK:**  And counsel for Peter Gerace.
18     **MR. COHEN:**  Good morning, Judge, Steven M. Cohen and
19  Eric Soehnlein, appearing for Peter Gerace, who is present in
20  the courtroom with us.
21     **MR. TRIPI:**  Good morning, Your Honor.
22     **THE COURT:**  Okay.  We are here today to discuss the
23  witness list, Mr. Cohen, that you submitted on Friday on behalf
24  of Mr. Gerace.
25     And I remind you, Mr. Cohen, that we are in an open

1   Courtroom.  If we need a sidebar, ask for it.

2           My review of that Friday witness list reveals three

3   names, witness number 239, 240 and 171.

4           And regarding number 239, Mr. Cohen, if you have that

5   in front of you or maybe you know who 239 is -- do you need to

6   look at it?

7           I have a copy here.

8           **MR. COHEN:**  Yes, sir.  If I --

9           **THE COURT:**  239, my question is is that person the

10  landscaper, whose made an appearance in this case or is it a

11  different person who shares that same name?

12          **MR. COHEN:**  He is a landscaper.  And he is a part

13  owner of certain property that was brought up during Grand Jury

14  testimony and in the Jencks 3500 material that was turned over

15  to us.

16          I have the specifics, if the Court needs it.

17          **THE COURT:**  Okay.  No.  If 239 is the landscaper, then

18  I don't think I need to know anything more about 239.

19          Bear with me for a minute.  All right.  So we've got a

20  concern, none the less, regarding 240 and 171.

21          As to 240 and 171, the statute, which is 28 United

22  States Code 455(b)(5)(iv), I-V, four, mandates a non-waivable

23  recusal by me if any one of those two -- if either one of those

24  two is likely to be called as a material witness at trial.

25          Mr. Cohen, why did you list 171 and 240 as witnesses

1   and do you have any proffer that you would like to make, other
2   than what's on the witness list?
3            **MR. COHEN:**  Your Honor, I would say that with regard
4   to all three of those witnesses, 239, 240 and 171, we're getting
5   that from the material that the Government has turned over to us
6   as part of its Jencks.
7            The Grand Jury testimony that we've been given access
8   to brings those names up significantly and I have a duty to
9   reserve my rights to call them.
10           If you are asking whether I intend to call them, we
11  have to see how the case plays out.  I don't know yet, but,
12  certainly, the Government felt it was important enough to
13  question about these three individuals -- we'll say the two
14  individuals.
15           And they are on my list and they have to stay there
16  and whether I use them depends upon the case that the Government
17  puts on.
18           **MR. TRIPI:**  Briefly respond, Your Honor?
19           **THE COURT:**  Mr. Tripi, go ahead.
20           **MR. TRIPI:**  I would challenge the defense's
21  characterization that these people were extensively questioned
22  about.
23           171, I don't recall that name even being brought up in
24  any Grand Jury transcript.  And if I'm mistaken about that,
25  perhaps defense counsel could point us to the specific page in

1  reference to the Jencks material that they are describing.

2       As to 240, that name came up in the context of certain
3  testimony that has zero relevance to this trial, with regard to
4  a connection to defendant Gerace's brother, Anthony Gerace, who
5  has plead guilty long ago.

6       And is highly tangential, irrelevant and at best --
7  well, I'll leave it at that.  Highly tangential and irrelevant.

8       And it certainly didn't come up in the context of what
9  they have listed it for on the witness list.

10      **THE COURT:**  Well, that's actually where I'm coming
11 from.

12      171 says that he's going to testify about his
13 relationship with your client, Mr. Cohen, and what 171
14 personally observed during the course of his relationship with
15 your client and it's pretty similar to the way 240 reads.

16      240 is going to testify about his relationship with
17 and observations of your client.

18      Isn't there anybody else among the thousands of people
19 that your client undoubtedly knows that can come and do that
20 yoman's work, Mr. Cohen?

21      **MR. COHEN:**  Well, it's come out, Your Honor, that my
22 client spent at least a dozen -- stayed at a certain house in
23 Ellicottville a dozen times, so the relationship -- and this
24 was -- this is information that came out from the material that
25 I was provided.

1            I've got cites to specific areas in the Grand Jury

2    testimony.  I recognize the obligation to keep this

3    confidential, but I've got -- I've got cites.

4            I've got the Grand Jury testimony of the various

5    people who testified about the relationships.  And as I said, I

6    didn't whip up these names out of thin air.

7            I've got chapter and verse of where they came from, so

8    if -- and you're right if you are suggesting, Judge, this is a

9    character case.

10           That's all this case is is a character case.  This is

11   not going to be a case where the Government is going to be

12   pointing to the table and showing these are the drugs that were

13   seized or this is the evidence that was seized during numerous

14   warrant searches, because nothing was turned up.

15           It's all about second and thirdhand, sometimes

16   firsthand testimony from people who are largely incredible.

17           And I also intend to be able to -- as a character

18   case, to not only be put on in my direct case to show the

19   character of my client, but it can also be used to impeach the

20   character of the witnesses upon which the U.S. Attorney is

21   relying.

22           **THE COURT:**  Mr. MacKay, Mr. Singer, anything to add to

23   this conversation?

24           **MR. MacKAY:**  No, Your Honor.

25           **MR. TRIPI:**  That's not what their witness description

1  says.
2         And I, again, challenge the defense to point us to
3  specific references in the Grand Jury that witnesses 240 and 171
4  provide any relevant information relating to the character of
5  Mr. Gerace. I challenge them to point you to that.
6         **THE COURT:** Mr. Cohen, last word.
7         **MR. COHEN:** Judge, we have to see how the Government's
8  case fleshes out.
9         Many of those witnesses are there as a reservation of
10 rights to call them, if the need should arise. And I do reserve
11 my rights to call them should the need arise and see how the
12 case pans out.
13        **THE COURT:** Well, the statute requires me to evaluate
14 whether they are likely to be called as material witnesses.
15        Are they likely to be called as material witnesses,
16 Mr. Cohen?
17        **MR. SOEHNLEIN:** I'm sorry, Your Honor. Can we take a
18 break real quick and just get that hard copy of the witness list
19 to straighten something out?
20        **MR. COHEN:** Yeah. Yeah. Can I see it?
21        171 is likely to be called, Your Honor. I'm glad I
22 just searched the list, because I was mistaken as to my
23 assumption. Yes. He is likely to be called.
24        239 is likely to be called, Your Honor.
25        240 depends entirely on the case that --

```
 1              THE COURT:  And as -- okay.  Got it.  239 is of no
 2   concern to me, though, based on your representation, Mr. Cohen.
 3              MR. COHEN:  I will point out that there was a -- there
 4   was a news article which describes the relationship of witness
 5   239 to other people.
 6              And I don't know the accuracy of that news article,
 7   but that may be something that the Court would want to see.  It
 8   was a commercial publication.  I don't think many people read
 9   it.
10              THE COURT:  I've seen it, Mr. Cohen.
11              MR. COHEN:  Okay.
12              THE COURT:  But I think the procedural history of this
13   case from long ago addresses that issue.
14              MR. COHEN:  I'm fine with it.  I raised my concerns at
15   the sidebar, under white noise previously.  And I think the
16   Court has all the evidence it needs.
17              THE COURT:  Well, if 239 is a landscaper, I don't have
18   any concern about 239.
19              And you've represented that 171 and 240 -- 171 is
20   likely to be called and 240 is a maybe.
21              Is that what you said, Mr. Cohen?
22              MR. COHEN:  That's correct.
23              THE COURT:  Okay.
24              MR. COHEN:  I would say 240 is a realistic possibility
25   and 240 -- excuse me, 239 -- 240 is a possibility and 171 is a
```

```
 1   likely.
 2           THE COURT:  Okay.  Can I have that witness list back
 3   for myself?
 4           Anybody else have anything to say on this topic?
 5           MR. TRIPI:  No.  I rest on my remarks about pointing
 6   you to the specific chapter and verse, Judge.
 7           THE COURT:  As the case law recognizes, and I'm sure,
 8   Counsel, you are aware of this case law, recusal is no small
 9   matter.
10           In fact, there is as much of an obligation for a judge
11   not to recuse when recusal is not called for, as there is for a
12   judge to recuse when recusal is called for and judges must not
13   and ought not abdicate.
14           The reason for that is that disqualification must
15   reflect not only the need to secure public confidence in court
16   proceedings, but also the need to prevent parties from
17   improperly obtaining the disqualification of a judge, thereby
18   manipulating the system for strategic reasons, perhaps to obtain
19   a judge more to their liking or other strategic reasons.  That's
20   the case law in a nutshell, too voluminous to cite.
21           I am sceptical of this tactic.  It appears to be
22   gamesmanship -- some kind of a maneuver of some sort.
23           More than that, I'm bound, however, by the statute's
24   clear terms.  Because these two listed individuals qualify to
25   trigger the statute, I have no practical ability at trial to
```

1  rule on whether they may be allowed to testify under the rules
2  of evidence, as unlikely as that actually may be.  Hence, the
3  automatic rule of Section 455.
4          Thus, because the statutory test is met by Mr. Cohen's
5  proffer, I am duty bound to recuse.
6          Okay.  This is the text order that I just entered:
7  Given defendant Peter Gerace, Jr.'s inclusion of two individuals
8  as supposed character witnesses among the hundreds of
9  individuals on his witness list, recusal, even in the absence of
10 any bias, prejudice or partiality is now required under 28
11 U.S.C. 455(b)(5)(iv), the undersigned is hereby recused.
12         These cases, 19-CR-27 and 23-CR-37, which have been
13 joined for trial will be reassigned to another District judge
14 for all further proceedings.
15         Have a good day everyone.
16         **MR. TRIPI:**  Judge, will there be any transfer to a
17 judge that could try this on the schedule that you set?
18         **THE COURT:**  The Court is working on determining who
19 has the availability in his or her schedule to proceed.  It's in
20 process.
21         **MR. TRIPI:**  Thank you, Judge.
22         **MR. SOEHNLEIN:**  Your Honor, before we go, can we have
23 a brief conference with Your Honor with the white noise on,
24 please?
25         (Sidebar was commenced at this time.)

1       **MR. SOEHNLEIN:**  Thank you, Judge.  I was concerned
2  about your comments about gamesmanship and so I want to make the
3  record crystal clear on that point, okay?
4       With respect to Mr. ███████, (Witness 171), a number
5  of allegations the Government has made in this case has to do
6  with Mr. Gerace's relationship with law enforcement, payment of
7  money to law enforcement for alleged improper purposes.
8       He does have a relationship with several members of
9  law enforcement.  He has a particularly close relationship with
10 that individual, that is included in payment of money for
11 various things, various charitable contributions and things of
12 that nature.
13      As a defense attorney and a trial practitioner, that
14 is a very important thing to bring out in front of a jury and I
15 think it's important.
16      I wanted the record to be made clear and I wanted Your
17 Honor to understand that the decision to include that name
18 wasn't taken lightly.  It really wasn't, okay?
19      Thank you for letting us come up and make the record,
20 Judge.  I appreciate it.
21      **THE COURT:**  Anybody else?
22      **MR. TRIPI:**  That information is not part of the
23 Government's allegations.
24      It's unknown to the Government and they have still
25 failed to cite to you a spot in the Grand Jury that talks about

1   a charitable donation from Peter Gerace to a relative of Your
2   Honor, so that's all I have to say.
3           **MR. SOEHNLEIN:**  Your Honor, it's -- there are several
4   people in the Grand Jury that testified that Mr. Gerace has a
5   cozy and inappropriate relationship with law enforcement.
6           **MR. TRIPI:**  Not with 171.
7           **MR. SOEHNLEIN:**  And it's our obligation to bring out
8   the fact that he has a relationship with several individuals in
9   law enforcement and that that relationship is appropriate.
10          It's a character case, Your Honor.  Like I said, it's
11  not something that we undertook lightly.
12          **THE COURT:**  Have a good day.

14                  (Proceedings concluded at 9:51 a.m.)
15                              *   *   *

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York before the Honorable John L. Sinatra, Jr.

_s/ Bonnie S. Weber_     June 23, 2023
Signature                Date

BONNIE S. WEBER, RPR

Official Court Reporter
United States District Court
Western District of New York